## WILLIS v. WILLIS' ADM'R.

1. Where letters of administration are revoked upon the failure of the administrator to renew his bond, as required by statute, and upon the settlement of his accounts, in the Orphans' Court, a decree is rendered against him, for the amount due by him to the estate, in favor of his successor, and execution ordered to issue thereon—the decree, at least as it respects the order for an execution, is unauthorized by any statute, and cannot be supported.

Writ of Error to the Orphans' Court of Montgomery.

From the record in this case, it appears that the plaintiff in error, as the administrator of Britton Willis, deceased, was summoned to renew his bond, or show cause why the letters of administration previously granted to him, should not be revoked.    He failed to renew his bond as required ; thereupon his letters of administration were revoked, and an order was made for the settlement of his accounts on a day designated.    At the day appointed, the plaintiff filed his accounts

and vouchers for settlement; whereupon the court appointed a guardian *ad·litem*, for the infant distributees of the estate, and made publication requiring all persons interested to show cause why the account should not be stated, allowed, &c.

The court rendered a decree reciting the appointment of the defendant in error as administrator of the intestate, and that the accounts of his predecessor had been examined, stated, and found to be correct; from which it appears that he was indebted to the estate the sum of $2,404 13. A decree was rendered against the plaintiff in error for that sum, in favor of McLemore, as administrator, and an execution directed to issue accordingly.

J. E. BELSER, for the plaintiff in error. There is no statute which authorizes the Orphans' Court to render a judgment in favor of a subsequent administrator, against his predecessor. If this be so, the decree is clearly erroneous. According to a decision of this court, even an action instituted in the ordinary mode, could not be suppported. The decree is a final one, and if it could not regularly be rendered in favor of the distributees, the court should merely have ascertained the balance, without ordering or allowing an execution thereon.

I. E. HAYNE, for the defendant in error. An action at law may be maintained by an administrator *de·bonis non* against a preceding administrator who has been *removed* from the administration. [Clay's Dig. 221, § 4.] The cases in 2 Porter's Rep. 555, 558, and 3 Ala. Rep. 670, so far from opposing this conclusion, which is necessarily inferible from the statute, tend to support it.

The succeeding administrator may have sued at law, under the express terms of the statute, or have sought to recover by decree of the Orphans' Court what was due from his predecessor. This view is consistent with the case in 2 Stew. & P. Rep. 70.

The Orphans' Court had Willis before it for final settlement—the statute shows that his successor was entitled to the assets in his hands, and no reason is perceived why the

decree should not be so rendered.    See also Clay's Dig. 194, § 9; 304, § 42.

COLLIER, C. J.—By an act passed in 1806, the Orphans' Court is invested with full power to require the renewal of administration bonds, where the security previously given shall be insufficient.   "And if it appear upon examination, that any administrator hath embezzled, wasted, or misapplied all, or any part of the decedent's estate, or shall refuse or neglect to give bond with security as aforesaid; the said court may forthwith revoke or repeal the letters of administration ; and thereupon grant letters of administration to such other person or persons having a right thereto, as will give bond in manner and form aforesaid ; who may have actions of trover, detinue, account, and on the case, for such goods or chattels as came to the possession of the former administrators, and were withheld, wasted, embezzled, detained, or misapplied by any of them, and satisfaction made for the same." [Clay's Dig. 221, § 4.]

In the Judge of the Benton County Court v. Price, et al. 6 Ala. Rep. 36, we held that neither of the actions provided by this statute, nor any other was maintainable at common law, where the assets of the estate had been wasted or converted ; "and that the act itself only applied, where letters of administration had been revoked and granted to another for either of the causes mentioned in it."  ·Further, that it was not allowable to sue the sureties in the administration bond, either jointly with their principal, or alone, until a judgment or decree was first obtained against the principal and an execution thereon prove unproductive.    See Chamberlain v. Bates, 2 Porter's Rep. 550.

According to these principles, the court, in the case last cited, held, that the authority of the administrator de bonis non extends only to such of the personalty of his intestate as remain in specie, unaltered or unconverted by his predecessor, and so far only can he be regarded a trustee for distributees and creditors.    It was however added, that if administration be granted to an improper person, or by an improper court, and afterwards revoked, the subsequent administrator, properly appointed, has a general commission of the administra-

tion, and is therefore entitled to call the displaced administrator to account, as in the case of an executor *de son tort.* The conclusion was, "that an administrator *de bonis non* cannot sue the representative of a former executor, or administrator, either at law or in equity, for assets wasted or converted, by the first executor or administrator; but such suit may be brought directly by creditors, legatees, or distributees."

The 21st section of the act of 1806, authorizes the Judge of the Orphans' Court to examine, audit, state and report for allowance, all accounts of administrators, executors, and guardians, and if no exception is made to the report, or being made, is overruled, to decree an allowance of the account as stated. [Clay's D. 226, § 27.] By the 24th section of the act of 1821, it is enacted, that "the documents and evidence of all settlements, made with executors, administrators and guardians, shall be carefully preserved by the clerk of the county court, and the settlement entered of record; which evidence, vouchers, documents and settlement, shall be good evidence in any suit, for or against such executor, administrator, or guardian, and shall not be impeached, except for fraud in obtaining the same." [Clay's Dig. 304, § 37.]

These enactments only authorized an allowance of the account of an executor, administrator. &c., as reported by the Judge, to be decreed, and declared its effect as evidence. Thus stood the matter when the statute of 1830 was passed; the first section of which provides, that "all decrees made by the Orphans' Court on final settlement of the accounts of executors, administrators, and guardians, shall have the force and effect of judgments at law, and executions may issue thereon, for the collection of the several distributive amounts against such executor, administrator or guardian." [Clay's Dig. 304, § 42.] The second section of the same statute gives to each distributee, heir, or devisee, a writ of execution, or attachment, when a distribution of real or personal estate is decreed, one or both, in the case of personal estate; and in the case of real estate, a writ of *habere facias possessionem,* against the executor, administrator, or guardian. [Id. 305, § 43.] And the act of 1832, directs that the court on final settlements of executors, administrators, and guardians,

shall assess and insert in its decree, the amount of each distributive share. [Id. § 44.] The statute of 1843, to amend the laws in relation to insolvent estates, authorises the Orphans' Court to render a decree in favor of· an administrator *de bonis non,* appointed pursuant to its provisions, against his predecessor, for all moneys found due from him, to the estate, and all such goods, chattels, *choses in action,* and other personal effects, and deeds and other evidences of title to realty, as may be in his hands belonging to the estate. [Clay's Dig. 194, § 9.] This enactment applies exclusively to the administration of insolvent estates, and is now referred to, because it was cited at the bar, to show the policy of the legislation in cases analagous to that before us.

We have thus noticed the statutes and adjudications which are at all times important to guide us to a conclusion, and it can scarcely be necessary to argue that they do not warrant to its full extent, the decree of the Orphans' Court. Whether it is competent in a case like the present for that Court to receive and adjust the accounts of a first administrator upon their voluntary presentation for settlement, or to require their production for that purpose, we will not stop to inquire. For however this may be, it is clear that there was no statute previous to 1830, which authorized an execution to issue upon a decree of the Orphans' Court, and the act of that year only gave it in favor of a "distributee, heir, or devisee." Neither of these designations embrace an administrator *de bonis non.*

The decree in the case before us, after ascertaining a certain sum to be in the hands of the displaced administrator, to which the estate of the intestate was entitled adjudges the same to be paid over to his successor, and directs an execution to issue for the collection thereof. Here then, the decree is erroneous, at least as it respects the order for an execution. [McLeod v. Mason, 5 Porter's Rep. 223,] This must be regarded as a part of the decree, as it undertakes to impart to it, an efficiency and influence beyond what the law accorded to such a decree. Crenshaw v. Hardy, 3 Ala. Rep. 653, in this respect was unlike the present. There the order for an execution was said to be supererogatory, as the statute had declared the effect of the decree, and if the exe-

cution was irregular it might be superseded in vacation, or quashed in term time on motion.

We have only to add that the decree of the Orphans' Court is reversed.