# HARRISON'S ADMINISTRATOR *vs.* HARRISON'S DISTRIBUTEES.

[FINAL SETTLEMENT OF ACCOUNTS OF DECEASED ADMINISTRATOR.]

1. *Statute of non-claim; exception in favor of "heirs or legatees claiming as such."*—A proceeding by the distributees of an intestate's estate, against the personal representatives of the deceased administrator, to compel a settlement of his administration, if it be within the provisions of the statute of non-claim, (Code, §§ 1883–84,) is also within the exception in favor of "heirs or legatees claiming as such."

2. *Plea of statute of limitations of three years.*—A plea of the statute of limitations of three years must aver that the demand sued on is an open account, unless that fact appears on the face of the complaint.

3. *Pleading "in short by consent."*—It is no objection to a plea that it is pleaded "in short," or by name only, when the record shows that both parties pleaded "in short by consent," and that no objection to the plea was made in the court below on that account.

4. *Limitation of proceeding to compel settlement of accounts of deceased administrator.*—Under the statutes which were of force before the Code became operative, (January 17, 1853,) there was no limitation applicable to a proceeding by the distributees of an intestate's estate against the personal representatives of the deceased administrator, to compel a settlement of his administration.

5. *Distribution of assets, under order of court, no defense to citation for final settlement.*—A plea, averring that the deceased administrator, in his life-time, "duly distributed according to law, and by order of the proper court, all the assets which came to his hands as administrator of said estate," is no defense to such proceeding, since it does not show that he reduced to his possession all the assets with which he might have been chargeable, nor that he ever made a final settlement of his accounts.

6. *Keeping estate together without order of court; election by distributees.*—When an estate is kept together by the administrator without an order of court, the general rule is, that the distributees may, at their election, either charge him with the rent of the land and the hire of the slaves, or take the net proceeds of the crops raised by him; and the mere institution of a chancery suit by them, in which they sought to charge the administrator with the proceeds of the crops, does not conclude them as an election, when it appears that they voluntarily dismissed their bill before final decree.

7. *Same; what will justify.*—Where the administrator is proceeding to sell the slaves belonging to the estate, under an order of the court of probate, and is restrained by a bill in chancery filed by the distributees, this does not authorize him to keep the estate together during

31

the pendency of the chancery suit, without an order of court, when it appears that the sale was unnecessary, and, if made, would have been irregular and improper.

8. *Same; assessment of rent and hires.*—In such case, if the distributees elect to charge the administrator with the rent of the lands and the hire of the slaves, he can not claim to be charged only with a gross sum, as on an entire lease and hiring of the collective estate, but is chargeable with the separate value of each, according to the customary mode of leasing and hiring.

9. *Same; interest.*—The administrator is also chargeable, in such case, with interest on the value of the rents and hires, from the date of their maturity.

10. *Liability of deceased administrator for interest.*—On a compulsory settlement of the accounts of a deceased administrator, by his personal representatives, if it is shown that he used the moneys of the estate for his private purposes, he is chargeable, at the election of the distributees, either with the profit realized from the investment, or with interest from the time the money was used: but, on moneys not so used by him, nor expended in the payment of debts, he is only chargeable with interest, in the absence of special circumstances, from the expiration of a reasonable time after the lapse of eighteen months from the date of his appointment, within which it was his duty to distribute the funds, or make other legal use of them; and such reasonable time, under the facts of this case, was six months.

11. *Admissibility of appraisement, as evidence against administrator.*—The official appraisement of the property of the estate, being the *ex-parte* statement of a third person, with which the administrator is not shown to have had any connection, is not admissible evidence against him to prove the value of the property.

12. *Admissibility of judgments as evidence.*—A judgment is evidence for and against the whole world, to prove the fact of its rendition, and its amount.

13. *Value of rents charged against administrator.*—Where it is shown that the administrator publicly rented out the lands of the estate, though without authority, and became himself the lessee of the most valuable plantation, being one of the heirs and distributees, these facts, without more, do not justify the charge against him, in stating the account, of a higher rent than that bid at the public letting.

14. *Liability for loss of stock.*—Where the administrator accounts for the proceeds of the sale of the horses and mules belonging to the estate, and is also charged with the value of their hire while employed by him in cultivating the plantation, he should not be charged with the value of those who have died, unless their loss was caused by his neglect or mismanagement.

APPEAL from the Probate Court of Dallas.

IN the matter of the final settlement of Kirkland Harrison's administration on the estate of Richard B. Harrison,

deceased, by Francis A. Saunders and Margaret Harrison, as administrator and administratrix of said Kirkland Harrison, at the instance of Richard K. Harrison and others, who were distributees and heirs-at-law of said Richard B. Harrison. Richard B. Harrison died, intestate, in March, 1843, leaving a large estate, which consisted principally of lands and slaves. Letters of administration on his estate were granted by the probate court of said county, on the 27th March, 1843, to said Kirkland Harrison, who continued to discharge the duties of the trust until the latter part of the year 1849, when he died, never having settled his administration; and letters of administration on his estate were granted, in February, 1850, to said F. M. Saunders and Margaret Harrison. The citation to said administrators was issued in June, 1858.

The administrators demurred to the citation, "in short by consent," and assigned several grounds of demurrer; all of which were overruled by the court. They then filed nine pleas, "in short by consent," which were in the following words: "1. That they are not liable to be called on, in this court, to make any settlement in this court of the administration of their said intestate upon the estate of the said R. B. Harrison; and of this they put themselves upon the country. 2. To the said citation, and to the claim of each of the heirs and distributees of the said R. B. Harrison, separately, and to any one or all persons separately who may have any claim, of any nature whatsoever, against them as his administrators, growing out of, or originating in the administration of the said Kirkland Harrison on the estate of the said R. B. Harrison, defendants plead the statute of non-claim. 3. To the same, the statute of limitations of three years. 4. To the same, the statute of limitations of six years. 5. Payment. 6. Former recovery. 7. Defendants say, that they are not, and were not at the time of the issuing of the citation, or the commencement of this suit, administrators of the estate of the said Kirkland Harrison. 8. Defendants say, that on the —— day of ——, 185—, before the commencement of this suit, the said F. A. Saunders resigned his administration of said estate; and that afterwards, to-wit, on the —— day of ——,

185——, before the commencement of this suit, the said Margaret Harrison resigned her administration of said estate; and that both of said resignations were duly received and recorded by this court; and that they have turned over all the assets of said estate of Kirkland Harrison to their successors in said administration.   9. Defendants say, that the said Kirkland Harrison in his life-time, to-wit, on the —— day of ——, duly distributed, according to law, and by order of the proper court, all of the property and assets of the said R. B. Harrison which ever came into his hands as administrator of said estate."

The plaintiffs demurred to the second, third, fourth, fifth, and ninth pleas, and assigned the following as grounds of demurrer to each: "1st, that the facts therein stated are not sufficient in law to bar or preclude said plaintiffs from recovering in this case; 2d, that said pleas are vague and uncertain, not specifying any claim alleged to have been barred by the statutes of non-claim, or of limitations, nor the persons to whom the same were due, or to whom paid, or when; nor any fact identifying any claim whatever, upon which issue could be taken."   The following additional grounds of demurrer were specified to the ninth plea: "1st, that said plea does not show to whom, or when, said property was distributed; 2d, that it does not aver or show the court, by order of which said distribution is alleged to have been made; and, 3d, because it does not allege that any final settlement of the estate of Richard B. Harrison was made by said Kirkland Harrison, before any court having jurisdiction thereof."   The plaintiffs took issue on the first, sixth, and seventh pleas, and replied to the eighth plea, "that after said pretended resignation of said defendants, as administrator and administratrix of said Kirkland Harrison, and before the commencement of this suit, said defendants applied to, and obtained from said probate court, letters of administration on the estate of said Kirkland Harrison, deceased, to-wit, on the — day of——, 185—; and that they have in their possession, and under their control, as administrator and administratrix as aforesaid, the assets of the estate of said Kirkland Harrison, and have had the same ever since their said appointment; and

of this they put themselves upon the country; that they have *neither* made any settlement of their former administration, before any court having competent jurisdiction, and never parted with the assets of the estate of said Kirkland Harrison, but have always had possession and control thereof, since their first appointment as administrator and administratrix of said estate." The defendants demurred, "in short, by consent," to this replication, and joined in the demurrer to their several pleas, as above stated. The court sustained the demurrer to the pleas, and overruled the demurrer to the replication. Exceptions were reserved by the defendants to all the adverse rulings of the court on the pleadings.

In obedience to the citation, the administrators had previously filed their accounts and vouchers for a settlement of their intestate's administration, in which they charged him with numerous items, amounting in the aggregate to $42,745, and claimed credits amounting to about $32,117; and the distributees had filed their exceptions to the account as stated. The vouchers filed with their account by the administrators were one hundred and thirty in number; while the exceptions filed by the distributees to the credits claimed were fifty-one in number, and they also specified ninety-two additional items on the debit side of the account, with which they sought to charge the administrators. On the trial, after the pleadings were settled as above stated, the distributees filed fifty-six additional items of charge against the administrators. "To each of said exceptions to the account-current and vouchers, and to each of said motions to charge, separately, the defendants pleaded, in short by consent, 1st, the statute of non-claim; 2d, the statute of limitations of three years; and, 3d, the statute of limitations of six years. The plaintiffs demurred, in short by consent, to each and all of said pleas, and the court sustained their demurrers; to which said rulings of the court on each of said pleas, the defendants separately excepted." During the further progress of the trial, numerous exceptions were reserved by the administrators to the rulings of the court on questions of evidence, and to its adverse decisions on the various controverted items of the account;

but it is unnecessary to attempt a statement in detail of these matters, since the opinion of the court contains a sufficient statement of the material facts, so far as they are necessary to a correct understanding of the legal principles involved. The bill of exceptions extends through four hundred and eighty-five pages of the transcript. The assignments of error are seventy-eight in number, embracing all the rulings of the court on the pleadings, evidence, and items of the account, and the final decree.

ALEX. & JNO. WHITE, BYRD & MORGAN, and J. W. LAPSLEY, for the appellants.

I. W. GARROTT, and J. D. F. WILLIAMS, contra.

STONE, J.—The question which meets us at the threshold of this case, renders it necessary that we decide whether the claims which are the subject of controversy in this suit, are barred by the limitation known in this State as the statute of non-claim. Although that statute has existed for near fifty years, without material change in any point which the record before us presents, we are not aware that the point now under discussion has ever before been made or considered. Very able arguments have been submitted by counsel—arguments which furnish unmistakeable evidence of thorough research; and we have ourselves expended much time and labor in pursuit of authorities bearing on this question, with little or no success. Although most of the States composing the late Union have statutes of limitation, specially applicable to claims against the estates of decedents, in none of them have we found language like that which creates the difficulty in the present suit. This being the case, it will not surprise the profession, that neither the industry of counsel, nor our own reading, has led to the discovery of any adjudged cases to aid us in the construction of the language of our statute. Some adjudications have been made on the import of the word "claim," found in our statute; and from those adjudications, analogies, real or fancied, may be drawn; but we confess that we have derived little or nothing that is satisfactory from this source.—See McBroom v. Governor, 6 Por-

ter, 32; *Ready v. Thompson,* 4 Stew. & Por. 52; *Sharp v. Herrin,* 32 Ala. 502; *Gordon v. Gibbs,* 3 Smedes & M. 473; *Foster v. Maxcy,* 6 Yerger, 224; *Gooken v. Sanborn,* 3 N. H. 491; *Gunter v. Janes,* 6 California, 643; *Gray v. Palmer, ib.* 616; *Williams v. Conrad,* 11 Humph. 412; *Walker v. Byers,* 14 Ark. 246; *Doe v. McLoskey,* 1 Ala. 740, *et seq.; Murdock v. Rousseau,* 32 Ala. 611; *Puryear v. Puryear,* 34 Ala. 555.

The statute to be construed is found in the Code: "§ 1883. All claims against the estate of a deceased person, must be presented within eighteen months after the same have accrued, or within eighteen months after the grant of letters testamentary or of administration; and if not presented within that time, are forever barred." "§ 1884. The provisions of the preceding section do not apply to  *  * *  * heirs or legatees, claiming as such." (We omit the parts of section 1884 which do not apply to this case.)

The question before us arises on the construction of the language, "heirs and legatees claiming as such." This language was first employed in the act of 1815, (Clay's Digest, 195, § 17,) and was copied into the Code. For the appellants it is contended, that to come within the exception, the claimants must stand in the relation of heirs or legatees of *the estate* against which the claim is asserted, and to whose administrator, in the absence of the proviso, the claim should be presented.

After much reflection, I am still far from a satisfactory conviction that the solution I am about to give is the true one. My brothers are less troubled with doubts than I am, and, on that account, I announce the result with less reluctance. We hold, that the appellees are embraced in the proviso to the act of 1815, and in section 1884 of the Code, under the words "heirs and legatees claiming as such," for the following reasons:

First: They are within the letter of the statute. They claim *in the character of heirs and legatees,* which is but a legitimate paraphrase of the language, "heirs and legatees claiming as such." They come within the description, *heirs and legatees,* and their present claim can be asserted in no other capacity. They have claims against the estate of Kirkland Harrison, only because they are the next of kin,

*heirs*, &c. of Richard B. Harrison. True, the statute omits the word distributees; ·but we think that does not vary the result. The words, *heirs* and *legatees*, are evidently used in a generic sense, and are intended to embrace all persons who claim either by descent, or under testamentary provision.

Second : In the act of 1815, the exception in favor of "heirs and legatees, claiming as such," is put as a proviso to the section which enacts the bar, known as the statute of non-claim. In the Code, the exception is found in a separate section ; but this was done in pursuance of an evident plan of the codifiers, to embody our statutes, as far as possible, in brief sentences, confined to a single subject. The same plan was pursued in other parts of the Code ; and certainly a statute, thus framed, does not differ in its legal results from one which expresses the exception in the form of a proviso. Provisos and exceptions do not enlarge the operation of enactments, but are restrictive in their character. Now, our statute of non-claim, even without the exception, does not, and never did, embrace the claim of heirs or legatees, to inheritances or bequests coming to them directly from the estate of which they are heirs or legatees. They language of the statute is, (Code, § 1883,) "all claims against the estate of a deceased person" &c. To be *a claim against the estate,* there must be the relation of debtor and creditor ; and we are not aware of any conceivable case in which the claims of heirs and legatees *to* the estate, or parts of it, can be called claims *against* the estate. Claims against an estate are almost universally those claims against the testator or intestate, which existed, and were left unadjusted, at the time of his death. I will not say there may not be exceptional cases, in which valid claims against an estate may have their inception after the death of the person, late its owner ; but the general rule is the other way,—See *Mulhall v. Williams,* 32 Ala. 489, and authorities cited. It is manifest, however, that the claims of heirs and legatees, to share *in* the estate, after the payment of the debts, &c., is in no sense a claim against the estate. To hold, then, that the exception embraces only those persons who stand in the relation of heirs and

legatees to the estate, to whose administrator the statute requires claims to be presented, would be to give it no operation whatever, so far as the clause we are considering is concerned. We give it operation, by holding that it includes persons in the condition of the present appellees.

A further argument: *Claims against the estate of a deceased person*, are the subject of both sections of the Code—1883 and 1884. They make no allusion to claims *to* the estate, or to parts of it. Claims *against* the estate, if not presented, are barred ; and these sections embrace none other. Supplying the ellipsis in section 1884, it would read substantially as follows : Claims against the estate of a deceased person, preferred by heirs or legatees claiming as such, are not embraced in section 1883. That is, they are not barred by a failure to present them within eighteen months. Under the paraphrase of the statute above submitted—namely, that the provisions of section 1883 do not apply to the claims against the estate preferred by heirs and legatees claiming in that capacity, the present appellees are brought directly within the operation of the proviso or exception, and are not barred.

In what we here announce, it is not necessarily decided whether the claim of the appellees is embraced in the provisions of section 1883 of the Code. If embraced, it is also embraced in the exceptional clause of section 1884.

It is argued that what we have said above cannot be the proper construction of this clause, because, at the time it was first enacted, (1815,) and for thirty years afterwards, we had no statute which required, or even authorized, an administrator of an administrator to settle the administration of his intestate.—See *Willis v. Willis*, 9 Ala. 721; *Price v. Simmons*, 13 Ala. 749 ; *Whitworth's Distributees v. Whitworth's Adm'rs*, in manuscript. But, during all that time, the court of chancery possessed ample power in the premises, and this furnished a field for the statute to operate upon.—*Taliaferro v. Bassett*, 3 Ala. 674 ; *King v. Smith*, 15 Ala. 269.

It is further urged against this construction, that while it relieves the heirs and legatees of the first estate from the bar of the statute, the exception is not broad enough to

cover the case of the administrator *de bonis non ;* and as his right to cite the administrator of an administrator to a settlement is conferred by the same statute which confers the right on the heirs and legatees, this will lead to such gross inequality and injustice, that the legislature cannot be supposed to have intended such result.—See Code, §§ 1876 *et seq.*

Without intending to decide, at this time, whether or not the bar would operate, if pleaded against the administrator *de bonis non*, the legislature stands relieved of all charge of intentional inequality, when it is remembered that until 1845, thirty years after the enactment of the statute of non-claim with its exceptions, the administrator *de bonis non* could recover from the administrator in chief, or his representative, only such portion of the assets as remained in specie, unaltered and unconverted.—See *Moore v. Armstrong,* 9 Porter, 704 ; *Price v. Simmons, supra ;. Willis v. Willis, supra ; King v. Smith,* 15 Ala. 268 ; *Gould v. Hayes,* 19 Ala. 450. See, also, Pamph. Acts, 1844–5, p. 166 ; *ib.* 1845–6, p. 14 ; *ib.* 1853–4, p. 24. To a claim or suit for property, remaining in specie, the statute of non-claim is no defense.—*Locke v. Palmer,* 26 Ala. 312; *Andrews v. Huckabee,* 30 Ala. 151. This may account for the failure of the legislature to insert an exception in favor of administrators *de bonis non ;* for such exception, until 1845, would have been useless and supererogatory.

[2.] To the plea of the statute of limitations of three years, it is a sufficient objection, that the plea does not aver that the demand sued for is an open account ; and there is nothing in the petition for the citation which relieves the pleader from the duty of complying with this rule ; or which tends to show that the demand sought to be enforced is, under our decisions, an open account.— *Winston v. Trustees,* 1 Ala. 124; *Brooks v. McFarland,* 20 Ala. 483 ; *Sheppard v. Wilkins,* 1 Ala. 62.

[3.] It is objected to the plea of the statute of limitations of six years, that it is pleaded in short—simply by name. The record discloses that both parties to this controversy pleaded in short by consent, and no objection seems to have been taken in the court below on that account. Under these

circumstances, the plea must be regarded as well pleaded. See *Jackson v. Jackson*, 7 Ala. 791 ; *Todd v. Todd*, 15 Ala. 743 ; *Amason v. Nash*, 24 Ala. 281.

Richard B. Harrison died in March, 1843, and soon afterwards, Kirkland Harrison administered on his estate. Kirkland Harrison died in the fall or winter of 1849, without having settled his administration; and in February, 1850, F. A. Saunders and Mrs. Harrison administered on his estate. The present proceedings were instituted in June, 1858; citation was served soon afterwards, and the decree was rendered in 1859.

[4.] The statute of limitations of six years was demurred to in the court below, and the demurrer sustained; and this presents the next question for our consideration. As the cause of action in this case accrued before the Code became operative, (January 17th, 1853,) this question must be decided on the statutes found in Clay's Digest, p. 326. See Pamph. Acts 1853–4, p. 71.

There is no statute which, in terms, fixes a limitation to proceedings like the present ; this not being one of the actions mentioned in the six years' limitation.—Clay's Dig. 326, § 78. If, then, there be a limitation applicable to this case, it must be sought for in the analogy which is supposed to exist between the present proceedings and some of the actions enumerated. We deem it unnecessary to discuss this supposed analogy, for the following reasons :

First : Administrators, when they are appointed, and before they enter upon the performance of their duties, are required to give bond, conditioned to "perform all the duties which are, or may be, by law required of them."—Clay's Dig. 220, § 3 ; Code, § 1683. The voluntary or coerced settlement of an administrator in the probate court, although not generally a proceeding directly on the bond, is still so far connected with it, that, when a decree is rendered, and an execution returned "no property found," an execution may issue, for the enforcement of the decree, against the sureties on the bond.—Code, § 1922 ; *Elliott v. Mayfield*, 4 Ala. 417 ; *Kirby v. Anders*, 26 Ala. 466 ; *Poacher v. Weisinger*, 20 Ala. 102; *Hanna v. Price*, 23 Ala. 826. Against

liability, on their bond, for the payment of such decree, the sureties cannot interpose the plea of the statute of six years.—*Ragland v. Calhoun*, 36 Ala. 606. It would be strange if a limitation should run in favor of the principal obligor, while it would not exonerate the sureties, who only bind themselves for the defaults of their principal. To so hold, would be to give to the obligation of the sureties greater dignity and effect than the same instrument exerts on their principal.

It is proper that we should state, that the case of *Ragland v. Calhoun, supra*, turned on the construction of another statute than the one we are construing.

The argument offered above springs naturally out of the solemn bond and obligation which the administrator rests under, for the performance of all the duties which are, or may be, required of him by law. It is not weakened, nor rendered inapplicable to the present case, by the fact that this is a proceeding against the administrator of an administrator, upon the decree rendered in which cause no execution can issue against the sureties of Kirkland Harrison. See *Jenkins v. Gray*, 16 Ala. 100; *Kirby v. Anders*, 26 Ala. 466. Neither the principle of liability, nor the length of time necessary to perfect a bar, can be affected by the accident of the principal obligor's death, as we shall hereafter show.—See Code, § 1928.

Second : It is frequently the case, that the proceeding is instituted in the first instance on the bond of the administrator, without preliminary steps of any kind to charge the administrator. The following are of this class : When an administrator has neglected or failed to pay a judgment rendered against him, to be levied *de bonis intestatis*, a suit may be maintained on the bond against him and his sureties, even though no execution has issued for the collection of the judgment, provided assets had come to his hands with which he might have paid the judgment.—*Burke v. Adkins*, 2 Porter, 236; *Thompson v. Searcy*, 6 Porter, 393–412; *Kyle v. Mays*, 22 Ala. 692; *Amason v. Nash*, 24 Ala. 279; *Dean v. Portis*, 8 Ala. 104.

A distributee may proceed in equity against the administrator and his sureties, or, if the administrator dies leav-

ing no property, or having no personal representative within
the State, against the sureties alone, without first fixing a
liability on the administrator by suit. In such case, all the
obligors in the bond, save such as so die, or are insolvent,
should be made defendants.—See *Moore v. Armstrong,*
9 Porter, 697; *Taliaferro v. Bassett,* 3 Ala. 670–674; *Watts
v. Gayle,* 20 Ala. 817; *Frierson v. Travis,* in MSS.

In the settlement of administrators' accounts, no item
can be charged against the administrator, no matter how
he may have conducted himself in regard to it, unless such
item properly belong to the assets of the estate; for the
administrator, in such settlement, can only be charged to
the extent that he and his sureties are liable under the statu-
tory bond.—*Pettit v. Pettit,* 32 Ala. 288; *McCain v. McCain,*
12 Ala. 510; *Mounger v. Burke,* 17 Ala. 48.

On the question of the bond-liability of the administra-
tor and his sureties, see, also, *Aylett v. King,* 11 Leigh, 486;
*Wilson v. Buchanan,* 7 Grattan, 334; *Talliafer v. Thornton,*
6 Call, 21; *Spottswood v. Dandridge,* 4 Munf. 289; *Burnett
v. Harwell,* 3 Leigh, 89; *King v. Smith,* 15 Ala. 264; *Gould
v. Hayes,* 19 Ala. 438; *Holley v. Acre,* 23 Ala. 603; *Amason
v. Nash,* 24 Ala. 279; *Gray v. Jenkins, ib.* 516. See, 1 Lo-
max on Ex'ors, 328–9; *Irving v. Veitch,* 3 Mees. & Wels.
104–5; *Dowling v. Ford,* 11 Mees. & Wels. 328; *Burnet v.
Cooper,* 9 Beav. 252.

The liability, then, of the administrator and his sureties,
resting, as it does in this case, on the statutes of limitation
which were of force before the Code became operative,
there is no statute of limitations applicable to this case.
*Bedell v. Smith,* 37 Ala. 548–554.

We have thus far treated this question as *res integra.* In
the case of *Rhodes v. Turner,* (21 Ala. 210–217,) this court
said: " Our statutes fix no period as a limitation to pro-
ceedings against an executor or administrator in the orphans'
court, to compel him to come to a final settlement. We do
not think that the six years' statute, prescribed as the limi-
tation to actions at law for an account, and which, by
analogy, the chancery court adopts, can apply; for the
court here has the administration of the estate in progress,
and the proceedings before it must be considered as *in fieri,*

until the final settlement and discharge of the executor." For the only limitation, or presumption of settlement, applicable to such cases, see *McArthur v. Carrie*, 32 Ala. 75; *Austin v. Jordan*, 35 Ala. 642.

Section 1928 of the Code goes very far to show that, when an administrator of an administrator is cited to settle his intestate's administration, he can make no defense which his intestate could not have made. It provides that, "for waste or conversion of the assets of a deceased person by the executor or administrator, his personal representative is liable in the same manner as the executor or administrator guilty of the *devastavit* would be liable, if living."

[5.] The demurrer of the distributees to the ninth plea of the administrators, was also sustained. That plea avers, that the said Kirkland Harrison, in his lifetime, had " duly distributed, according to law, and by order of the proper court, all of the property and assets of the said R. B. Harrison, which ever came to his hands as administrator of said estate." This plea is defective. It is the duty of an administrator of an administrator to settle up the administration of his intestate, even if he has "distributed according to law, and by order of the proper court, " all the available assets of the estate, unless he has also made a final settlement. In other words, the duty of an administrator to make final settlement of the estate administered, does not depend on the contingency of his having in his hands assets to be distributed. Orders of division, and partial or annual settlements, may divest all the effects out of the administrator's hands, and still the right of the distributees to have account-current filed, audited, and decreed upon, will remain the same. It can not, otherwise, be certainly known, that the administrator has fully administered; and such settlement is due to the interest and safety of both the administrator and the distributees. The petition for citation to the administrators avers, that no settlement had been made of Kirkland Harrison's administration; and this plea does not negative that averment.—See Code, § § 1876, *et seq.;* Pamphlet Acts, 1853–4, 24.

But it is not enough that the administrator distribute all the property and assets that have *come into his hands*. He

is required to be diligent in reducing to his possession all the effects which reasonable care and vigilance can bring to his knowledge; and if he fail in thus possessing himself of assets that are available, he renders himself liable for the amount so lost.—*Duffie v. Buchanan,* 8 Ala. 27; *Hughes v. Mitchell,* 19 Ala. 268; *Milam v. Ragland, ib.* 88. This last ground, however, is not assigned as a ground of demurrer.

[6.] The question of election presents the next point for our consideration. The probate court allowed the distributees, against the objection of the administrators, to charge the estate of Kirkland Harrison with the hire of the slaves, rent of the lands, &c., instead of the net proceeds of the crops raised on the plantation during the years 1844 and 1845. No order appears to have been obtained by Kirkland Harrison to keep the estate together; and in such case, the general rule is, that those entitled to distribution may ratify, or not, at their pleasure, such unauthorized use of the property; and may either take the net proceeds of the crops, or recover rents and hires for the use of the property.—*McCreliss v. Hinkle,* 17 Ala. 459; *Stewart v. Stewart,* 31 Ala. 208–215; *Kavanaugh v. Thompson,* 16 Ala. 817.

For the administrators it is contended, that several of the distributees had previously elected to charge Kirkland Harrison's estate with the proceeds of the crops of 1844 1845, and not with the rents and hires; and it is here contended that, in allowing the distributees, under these circumstances, to elect, the probate court erred. For the purpose of showing that the distributees had determined their election, the administrators put in evidence the record of proceedings had in the chancery court of Dallas, as follows:

Bill in chancery, filed in 1846, by Robert and Amelia Rives and others, as distributees of R. B. Harrison, deceased, against Kirkland Harrison, administrator, to bring him to a settlement of his administration. Several orders of amendment and revivor were made; the bill was answered; a decretal order was made, staying proceedings in the probate court, and referring to the register the matter of taking and stating the account of the administration. The account was never taken; but all else, save

the execution of the reference, and the report and confirmation of it, seems to have been done. If the suit had been carried through those concluding stages, the administration would have been brought to a settlement. In this stage of the case, the bill was voluntarily dismissed by complainants in 1852. That bill sought to charge the administrator with *the proceeds* of the crops of 1844 and 1845.

We have been referred to a few of the authorities in regard to election of remedies, which state, as a principle, that the bringing of a suit, in the one right, is an election to abandon the other.—See *Sawyer v. Wood*, 3 Johns. Ch. 422; *George v. Bossing*, 15 B. Mon. 565; *Bond v. Hopkins*, 1 Sch. & Lef. 441. See, also, 1 Tidd's Pr. 10; Edw. on Bailments, 132; *Bohannan v. Pope*, 42 Maine, 97; 3 Com. Digest, 541; *Lewis v. Dubose*, 29 Ala. 221. None of the cited cases, however, presented the question of a suit commenced, and afterwards dismissed before final judgment. In fact, the remarks of the court in the cases from 42 Maine, 1 Sch. & Lef., 29 Ala., and 3 Johns. Ch., were made simply by way of illustration; for the question did not arise in either of those cases. Examining the cases referred to by Edwards, it will be seen that his attention was directed to an entirely different subject. In the case from 15th B. Monroe, the suit then in process of adjudication was the suit which it was held determined the election. That suit had been decided in the court below, and was then under consideration on appeal. In the case of *Lewis v. Dubose*, the question did not arise; and it is not an authority for the position contended for. Hence, we feel authorized to say no authority has been cited in support of this argument, that is directly to the point; nor have we been able to find any.

In very many cases it has been decided, that making a disposition of property in the one right, or recovering judgment, and obtaining satisfaction, does determine the election; for, in such case, the parties can not be placed in *statu quo.*—See 9 Viner's Abr. 363; 3 Com. Dig., *supra;* 3 Bac. Abr. 314; *Hooks v. Smith*, 18 Ala. 338; *Mosely v. Wilkinson*, 24 Ala. 416; *Fireman's Ins. Co. v. Cochran & Co.*, 27 Ala. 236; *Butler v. O'Brien*, 5 Ala .316; *Sheppard v.*

*Buford,* 7 Ala. 94; *Rotch v. Hawes,* 12 Pick. 136; *Southard v. Pope,* 9 B. Mon. 264; *Leonard v. Crommelin,* 1 Edw. Ch. 206; *Gest v. Flock,* 1 Green, C. C. 115; *Donaldson v. Kendall,* 2 Geo. Rep. 231; *Buttricke v. Broadhurst,* 1 Ves. Jr. 171; *S. C.,* 3 Bro. C. C. 88; *Ex parte Warder,* 3 Bro. C. C. 191; *Ex parte Cator, ib.* 216; *Upshaw v. Upshaw,* 2 Hen. & Munf. 381; *Hewes v. Parkman,* 20 Pick. 90; *Rawson v. Turner,* 4 Johns. 469; *McElroy v. Mancius,* 13 Johns. 121; *Stuck v. Mackey,* 4 Watts & Serg. 196; *Hannah v. Swarner,* 3 Watts & Serg. 223; *Evans v. Iglehart,* 6 Gill & Johns. 188; *Wolfe v. Parham,* 18 Ala. 441.

There is a class of cases in which a party, having an election of remedies, forfeits the one by interfering actively in the other, with a view to giving it effect, or of obtaining a benefit under it. They stand, however, on their own peculiar principles; and in none of them had the proceeding been dismissed; nor, indeed, had the party, who claimed the right to elect, the power of dismissing the proceedings. See *Wilson v. Matthews,* 32 Ala. 350; *McCarty v. Gibson,* 5 Grat. 307; *Donelly v. Corbett,* 3 Sel. 506; *Phillips v. Allen,* 8 B. & Cres. 477; *Clay v. Smith,* 3 Pet. 411; *Norton v. Cook,* 9 Conn. 314; *Jones v. Horsey,* 4 Maryland, 306; *Lanahan v. Latrobe,* 7 Md. 268; *Blackman v. Green,* 24 Ver. 17. This class of cases is controlled by principles that have no application to the question before us.

Where the acts relied on are of doubtful and indeterminate character, or are capable of being annulled and the parties left in *statu quo,* the courts will not force conclusions in order, thereby, to hold that an election has been made. In the case of *Reaves v. Garrett,* the dispositions of Mr. Garrett's will left in his widow, afterwards Mrs. Reaves, the right to renounce the bequests of his will, and to claim certain slaves in her own right; or, to abide by the terms of the will, and surrender her title to her slaves. The will appointed her executrix. She propounded the will for probate, and had it proved, qualified as executrix, acted in that capacity for about fifteen months, returned the slaves in her inventory of the estate, charged herself in annual settlement with their appraised value, kept possession of all the property until her resignation as executrix, and once

32

declared that she intended to abide by the will, notwithstanding she was apprised of her adverse right. She then resigned the office of executrix, and set up claim to the slaves in her own right. We held that her right to the slaves was not barred or concluded by what she had said and done; and her election to claim against the will was upheld.—See 34 Ala. 561.

Where there is a privilege of election, the authorities go very far in maintaining the right of the party to be fully and perfectly informed of all the matters which go to make up the respective values of the interests, between which a choice is to be made, and of the facts as bearing on the question of those values. In a case where a widow had a right of election between the provisions of her husband's will and the rights which the law would confer upon her, the court said, "Until the settlement of the estate, the law gives the wife the election. She has a right to know what she has to elect. Election is choice, and she is entitled to know correctly what she has to choose between. The cases have gone so far, that after the wife has made her election, and has received benefits under the will, she has been allowed to retract and resort to her legal rights, when the estate has turned out differently from what it was believed and stated to be at the time of the election prematurely made."—*Hall v. Hall*, 2 McC. Ch. 280. See, also, *Harcum v. Hudnall*, 14 Grat. 369; *Wake v. Wake*, 3 Bro. C. C. 255; *Blann v. Crocheron*, 20 Ala. 320; *Ravencroft v. Eyles*, 2 Wils. 294; *Blann v. Crocheron*, 19 Ala. 647; *Spivey v. Morris*, 18 Ala. 254; 1 Lead. Ca. in Eq. 300 to 303; *Coleman v. Adams*, at last term.

So jealous is the law of this right of election, when necessary to a full understanding of the facts, it has been decided that the party having the right may file a bill and have an account taken, that he may exercise the right understandingly.—See *Pusey v. Desbouvrie*, 3 Pre. Wms. 320–1; *Butricke v. Broadhurst*, 1 Ves. Jr., 161; *Kidney v. Coussmaker*, 12 Ves. 153; 1 Lead. Ca. Eq. 300. Mistaken or unsuccessful, suits have been ruled not to be an election. *Reese v. Kirk*, 29 Ala. 409; *Deens v. Dunklin*, 33 Ala. 47.

But there is a recognized and well-established principle

in the administration of the doctrine of election of remedies, which seems to prove, beyond controversy, that merely bringing a suit, without prosecuting it to final judgment, can not determine the right of election. It is known that there are many cases in which the remedies at law and in chancery are concurrent; and the party complaining may resort to either the one or the other. If he resort to both, and the proceedings are pending in each court at the same time, did any one ever suppose that the proceedings in the suit first commenced could be pleaded in abatement of the suit last commenced? Yet, if the bringing of a suit is the determination of the right of election, such plea would be evidently good. The practice in such cases is, to put the actor to his election, which remedy he will pursue, and to compel him to abandon the other.—*Houston v. Sadler,* 4 S. & P. 130; *P. & M. Bank v. Borland,* 5 Ala. 531; *P. & M. Bank v. Walker,* 7 Ala. 926; *Pettijohn v. Williams,* 2 Jones' Eq. 302; *McRae v. Singleton,* 35 Ala. 297; 2 Lomax on Ex'ors, 508. We hold, that the petitioners in this case did not, in the proceedings in chancery, do enough to determine their election.—See *Howard v. Bugbee,* 25 Ala. 548; *Vernon v. Marsh,* 2 Green's Ch. 502. See, also, *Seabury v. Stewart,* 22 Ala. 217–8; 1 Lead. Cases in Eq. 300.

[7.] We have announced, as the general rule, that if an administrator, without an order therefor, keep the estate together for a longer period than the statute expressly allows, [see Clay's Dig. 196, § 19; Code, § 1900,] those entitled to distribution may ratify or not, at their pleasure, such unauthorized use of the property, and may take either the proceeds of the crops, or recover rents and hires for the use of the property. It is clear, that in the absence of an order of court for the purpose, the administrator had no authority to keep up the plantation during the years 1844 and 1845. It is contended, however, that the administrator stands excused for thus keeping up the plantation, by the following state of facts:

The administrator, in January, 1844, had advertised, and was about to sell the slaves. The order of court, authorizing the sale, does not specify the purpose of the sale; but the condition of the estate justifies us in assuming that

the contemplated sale was for division. It is manifest that the sale was not necessary for the payment of debts. Two orders of sale appear in the record ; one dated March 27th, 1843, the day on which the administrator was appointed, and the other dated November 3d, 1843 ; each giving general authority and "leave to sell the personal property belonging to the estate of said deceased, according to law." It is not shown that either of these orders was made on the application of the administrator ; and according to the decisions of this court, (made in *Wyatt v. Rambo,* 29 Ala. 510 ; *Ikelheimer v. Chapman,* 32 Ala. 676 ; *Hall v. Chapman,* 35 Ala. 553,) the sale, if made, would have been void. On the eve of the proposed sale, the distributees filed their bill, alleging that a sale was unnecessary, either for division, or for any other purpose ; and obtained an injunction restraining the sale ; and it never was made.

At the November term, 1844, the distributees petitioned the orphans' court for an order to divide the slaves of said estate ; and at the December term following, the order was granted, and commissioners appointed. Why the division was not then made, the record does not inform us. At the close of the year 1845, another order for division was granted at the instance of Kirkland Harrison, the administrator ; and under this order the slaves were divided, and return made thereof to the February term, 1846, of the orphans' court, and then confirmed.

Independent of the fact that the sale of the slaves, if made under the orders for that purpose, would have been void, we think there are very satisfactory reasons why the bill in chancery and injunction furnish no excuse to the administrator for keeping up the plantation. Whatever might be the effect of a sale upon the title of the property, as a question of abstract right, under the act of 1809, (Clay's Dig. 223, § 13,) the administrator had no authority to sell slaves belonging to the estate, unless such sale was necessary to meet the wants of the administration, or to make distribution of the estate. Hence, it is conceivable that an administrator might place himself greatly in fault, while by a sale presenting the forms of law the title of the property would be divested out of the estate. Such was held to be

the case in *Steele v. Knox*, 10 Ala. 608 ; and such would have been the effect of a sale in this case, if the order had conformed to the rule laid down in *Wyatt v. Rambo.* That a sale is improper, unless required by the condition of the estate, is clearly declared in the case of *Lay v. Lawson*, 23 Ala. 390.—See, also, *Anderson v. Fox*, 2 Hen. & Munf. 245. The slaves of R. B. Harrison's estate were divisible without a sale ; and in the attempt to sell, the administrator was proceeding in violation of the law. It is difficult to believe that he could have been ignorant of his duty to divide, and not to sell the slaves. It is thus shown that, if the administrator had pursued the clearly defined line of his duty, neither the bill nor the injunction would have been necessary. He cannot excuse himself for one departure from duty, by showing that he was arrested in the attempt to commit another. Nor is any excuse offered, why the slaves and lands were not put to hire and rent, when the injunction was served, January 25th, 1844. We hold that the administrator is liable for hires and rents for the years 1844 and 1845, at the election of the distributees.

[8.] It is contended for appellants, that the estate of Kirkland Harrison should have been charged only with a gross sum for the hire of all the slaves, all the stock and the plantation implements, and the rent of the lands, as upon a hiring and lease of the collective estate of R. B. Harrison. Our statutes go very far to show that it never was intended that a plantation, slaves and stock, should be let to hire by a single contract. The following are some of the arguments which sustain this view :

First : The dower-interest, which exists in a majority of estates, will necessarily detract very materially from the entirety and availability of most landed estates, and hinder the successful cultivation of most plantations.—Clay's Digest, 172 ; Code, §§ 1359 to 1367. Second : Authority to keep up the plantation during the year of intestate's death, [Clay's Dig. 196, § 19 ; Code, § 1900,] and afterwards for a definite period, on obtaining an order of court therefor, [Clay's Dig. 198, § 30 ; Code, § 1902,] furnishes strong persuasive argument to show that, in the absence of such fact, and without such order, the estate should not be kept

together.—See *McCreliss v. Hinkle,* 17 Ala. 459. Third: The implied authority to hire out negroes at the end of the first year, who had, during that time, been reserved from hire because they were engaged in making a crop, was conferred as early as 1826.—Clay's Dig. 196, § 19. The authority to rent the land was not conferred until 1839.—Clay's Dig. 199, § 36. It could not have been contemplated that the lands and negroes should be leased and hired together.

But this question is settled by the decisions of this court, and by the uniform practice of the country.

In the case of *Steele v. Knox,* 10 Ala. 614, a case which presented the question now before us, our predecessors said: "As the distributees have elected to charge him [the administrator] with the value of the use of the property, he must pay hire for the slaves, according to the usual rates of hiring such slaves, in the customary mode during that period, and will be entitled to compensation for taking care of such as were helpless. And as he had the power to enter upon the land and rent it in virtue of the statute of 1839, he must be considered as having entered as administrator, and is therefore liable for the customary rent, in his official capacity, upon this settlement." See, also, *Benford v. Daniels,* 13 Ala. 673; *McCreliss v. Hinkle,* 17 Ala. 465; *Smith v. King,* 22 Ala. 561; *Montgomery v. Givhan,* 24 Ala. 588; *Stewart v. Stewart,* 31 Ala. 207.

We have no hesitation in affirming that the *customary mode* of hiring in this State, never has justified an administrator in disposing by lease and hire, and by one single contract, of a large plantation with its stock and implements of husbandry, together with more than one hundred slaves. Such contract would carry on its face evidence of mal-administration; for few, if any bidders could be found to compete at such a letting.

[9.] It is settled in this State that in taking an account like the present one, interest is chargeable on the value of the rents and hires, from the date of their maturity.—*Rowland v. Shelton,* 25 Ala. 220; *Stoudenmeier v. Williamson,* 29 Ala. 569; *Thompson v. Lee,* 31 Ala. 308; *Parker v. Parker,* 33 Ala. 459; *Mahone v. Williams,* in MSS.

[10.] The question of interest charged against the estate of

Kirkland Harrison, on moneys of the estate collected by him, is different from the one last considered. Of course, it could never have been supposed that an administrator, settling the account of his intestate, would or could take the exculpatory oath, for which section 1813 of the Code provides. Hence, the rule which obtains in the case of administrators settling their accounts, does not apply.—See *Brazeale v. Brazeale,* 9 Ala. 407; *King v. Cabiness,* 12 Ala. 598. It is shown, in this case, that considerable sums came to the hands of the administrator ; and, although he remained in the performance of his functions for more than six years, we are not advised that he made any attempt to distribute the funds. We do not know, and can not affirm, what he did with the funds ; but there are circumstances which tend to show that he blended them with his own, and kept no separate account. The probate court charged interest against the administrator, on moneys collected, from the date of the collection. In this, the court erred. "It would be laying too heavy a hand upon executors," says Chancellor Kent, " to charge interest from the moment money was received."—See *Dunscombe v. Dunscombe,* 1 Johns. Ch. 511. See, also, *Royall v. McKenzie,* 25 Ala. 363. As this case must go back for a re-statement of the account, we will content ourselves with a statement of the rule by which the probate court must be governed.

If it be shown that the administrator used the money of the estate for his own purposes, then his estate is responsible for the profit made, or for interest from the date of the use, at the election of the distributees.—Code, § 1813. If this be not shown, and this question be left as the present record presents it, then a different rule prevails. It is said that no absolute rule can be laid down, applicable alike to all cases ; but that it must be varied according to circumstances.—See *Dunscombe v. Dunscombe, supra,* and *Royall v. McKenzie, supra,* and authorities cited. It was certainly the duty of the administrator to retain the moneys not used in paying debts, until the expiration of eighteen months from the time of his appointment, unless the known condition of the estate justified him in reporting the estate solvent at an earlier day.—Code, sections 1821, and 1771-2. After

the expiration of the eighteen months, unless there be special reasons to the contrary, we hold it was the duty of the administrator to distribute, or, in some other legal mode, dispose of, or employ the funds of the estate ; and, if he failed to do so, that he is chargeable with interest, to commence at the termination of a reasonable time for such distribution or other disposition. Considering the condition of this estate and the distributees, we hold that six months was the proper period, after the expiration of the eighteen months, at the end of which time interest should commence to run. In re-stating the account, the probate court will compute interest according to the rule here declared.—See on this subject, *Miller v. Beverly*, 4 Hen. & Munf. 415 ; and *Brazeale v. Brazeale*, 9 Ala. 497.

[11.] We think the court erred in allowing the appraisement to be used as evidence of value. We are not advised that the administrator had, in any way, connected himself with it. It was but the sworn, *ex-parte* statement of third persons, and in no sense the act of the administrator. To allow such statement to conclude the rights of the administrator, would be a very dangerous innovation on the law of evidence. Having no right to cross-examine the appraisers as witnesses, their testimony, if it may be so called, should not have been received.—*Miller v. Jones*, 29 Ala. 175; *Steele v. Knox*, 10 Ala. 609 ; *Brown v. Steele*, 14 Ala. 63. We are aware that the Virginia court of appeals has decided this question differently, but their decision does not meet our approbation.—See *Rogers v. Chandler*, 3 Munf. 65.

[12.] The court did not err in receiving in evidence the certified statements from the chancery and circuit courts of Lowndes county. They were not only not objected to, but, in form, they were within the letter of the agreement of counsel ; and, in substance, they were strictly within the rule which declares that judgments are evidence for and against the whole world, to establish the fact of their existence, and the amount for which they are rendered.—1 Greenl. Ev. § 527 ; *Harrell v. Whitman*, 20 Ala. 519; *Snodgrass v. Br. Bank*, 25 Ala. 161 ; *Mervine v. Perkins*, 18 Ala. 241 ;

*Goodman v. Walker,* 30 Ala. 480; *Ansley v. Carlos,* 9 Ala. 973; *Moore v. Jones,* 13 Ala. 296.

[13.] We are satisfied with the valuation of the land-rents for 1844 and 1845. Some one or more of the years after 1845, the record shows that the administrator let the land to rent at the highest bidder. True, he let a large body of land at one time, and by one contract; but we cannot affirm that, under the circumstances, as then presenting themselves, this mode of letting did not appear to him to be most profitable to the estate. True, he became lessee himself of the most valuable plantation; but being one of the heirs-at-law, this, without more, did not render the contract either void or voidable.—*McLane v. Spence,* 6 Ala. 894. There is not enough in this record to justify the judgment of the probate court, in charging against the administrator a greater amount than he realized at the public letting.

We have not been able to discover the reasoning by which the probate judge ascertained and decreed the amount of the corn and fodder; but it may be correct. On the subject of the cotton seed, we have the same remark to make, as to quantity; and, under the testimony reported, we doubt if the cotton-seed should have been considered as a marketable commodity, or any charge made for it.

[14.] As the distributees obtained the benefit of the hire of the horses and mules, and the proceeds of their sale, the administrator should not have been charged with the value of such as may have died, unless there was neglect, or inattention in the management, causing the death.—See *Wilkinson v. Mosely,* 30 Ala. 562.

In the account of sales of the cotton crop of 1843, there appears an account due the merchants, which was probably contracted for needed supplies consumed on the plantation during the year. If so, it should be allowed as a credit to the administrator.

The account of A. Borland should not have been charged against the administrator, under the proof found in the record. If we mistake not, this account was charged twice. Neither should the administrator have been charged with the note of J. J. McRae, under the proof made.—See

LIBRARY.

*Craig v. McGehee,* 16 Ala. 45. One of the pieces of evidence in the case of the claim against Draughan is not in the record; and, in its absence, we are not able to affirm that the court erred in reference to that item.

There is evidence that the carpenter Jack, or Jackson, was publicly hired out for that part of the year 1843 which remained after intestate's death, for fifty-five dollars; and that Sam was hired for about the same amount. If this be the case, the administrator should not have been charged a greater sum for their hire for that time.

On the subject of negro hire for the years 1844 and 1845, we append to this opinion a catalogue of names and prices, which, we think, to be correct, according to the weight of the evidence. In fixing the hires of the women, allowance is made for abatement of the price-value, caused by pregnancy, or the encumbrance of nursing infants; and, hence, no farther credit should be allowed the administrator on that account.

We have disposed of every question which we deem material.

Reversed and remanded.