## BENFORD v. DANIELS.

1. Administration being granted upon an estate in 1840, the administrator continued to act until 1847, making annual sales by order of the court, and in 1846 applied for an entry *nunc pro tunc*, authorizing him to keep the estate together, under the act of 1835. Held, that as there was no record evidence that the original order was to keep the estate together, and as all the inferences from the conduct of the administrator, in the ad-

ministration, were, that he was acting under the general law, the court had no power to make such an order *nunc pro tunc.*

2. Although an administrator acting under a misapprehension, has incurred expenses in keeping up a farm, rearing the infant children, expending his own labor, &c. &c., he cannot be relieved in the orphans' court, but the distributees may elect, whether they will take the profits of the business, or proceed against him for the rent of the land, and use of the personal property.   Whether he could not have relief in another *forum—quere.*

Writ of Error to the Orphans' Court of Dallas.

The defendant in error, moved the orphans' court, to a-mend the original order, made six years previously, so as to authorize him to keep the estate together, under the act of 1835, which motion the court allowed, though there was no evidence of record that such order had been originally made. The plaintiff in error also objected to the compensation allowed the administrator.   The facts sufficiently appear in the opinion of the court.

The assignments of error present these matters for revision.

G. R. Evans, for the plaintiff in error.

1. An order, or judgment *nunc pro tunc,* must be predicated upon matters of record, or some memorandum of the court, and cannot be made on parol evidence.   Thompson v. Miller, 2 Stew. Rep. 470 ; Brown v. Bartlett, 2 Ala. R. 29 ; Armstrong v. Robinson and Barnwell, Ib. 164; Andrews, adm'r, v. Br. Bank at Mobile, 10 Ib. 375 ; Moody v. Keener, 9 Porter, 252.

2. The duty of the administrator is, to receive the assets of the estate, to pay the debts of the deceased, and to pay over the residue, if any, to those entitled.   Willis, adm'r, v. Heirs of Willis, 9 Ala. 336.   He has no authority, unless authorized by the will, or order, to keep together the estate, and work the slaves on the plantation, if he does so, it is at his own risk.   Steele v. Knox, 10 Ala. 608.   He cannot bind the estate by his contracts, and all expenditures by him, in his attempt to continue the plantation, are upon his own ac-

count, and not chargeable upon the estate.    Sumner v. Williams, et al. 8 Mass. Rep. 199 : Forster v. Fuller, 6 Ib. 58 ; Brewster v. Brewster, 8 Mass. 131 ; Washburn v. Hale, 10 Pick. 429.

3. A trustee can secure no personal advantage to himself, by reason of his trust, and least of all will he be allowed to keep up a plantation and employ himself as the overseer. Jenkins v. Hanahan, 1 Cheve Ch. Ca. 129.

4. Notwithstanding the rule, that a trustee shall have no allowance for his services, (Lewin on Trusts and Trustees, 438-9,) our courts, as well as the courts of other states, have so far departed from the rule, as to allow reasonable compensation in the way of commissions to executors, &c.    The general rule is five per cent on actual receipts, and more frequently below than above that amount.    Granberry v. Granberry, 1 Wash. 246 ; Taliaferro v. Minor, 2 Call. 190.    More than five per cent ought not to be allowed, except under peculiar circumstances.    Triplett's Ex'r v. Jameson, 2 Munf. 242 ; O'Neil v. Donnell, 9 Ala. 934 ; Harris v. Martin, Ib. 895.    See also, Pennsylvania and Maryland cases.

J. W. LAPSLEY and FELLOWS, for defendant in error.

In this case, all the questions are raised by the bills of exception, of which there are two, each of which presents but a single question.

I. Is there error to reverse the case in granting the order *nunc pro tunc?*

1. The order was regular.    The record evidence alone pointed clearly to the keeping the estate together, under the ten years law ; the leave granted annually to sell the cotton, and the receipt of the account sales by the court, establish that the judge had granted leave to keep up the plantation, in place of settling the estate at once.    At any rate, the record evidence, when aided by the very explicit and satisfactory parol evidence, was sufficient to warrant the order.    In many cases, the record has been aided by parol ; in fact without such aid, very few *nunc pro tunc* entries could be made. Clay's Dig. 322, § 55 ; Moore v. Horn and Bouldin, 5 Ala. 234 ; Moody v. Keener, 9 Porter, 252, 256.

2. But if the order to amend the record was irregular, it cannot reverse, for it was immaterial, and could not affect the rights of the parties under the proof in this case. According to the exact terms of the act, the proof shows beyond all question, that the judge did authorize and permit the administrators, on application made, and good cause shown, to keep the personal estate together, and exempt from sale ; and that the administrator did act under and execute this authority. The act does not require any entry of this permission, nor any modification of the letters. As to the form of the bond, &c., that part of the act is merely directory, and the permission of the judge to require or take the bond, or to require annual settlements, would not destroy or vitiate his action in permitting the estate to be kept together. Clay's Dig. 198, § 31-2-3.

The permission was given, and the estate in fact kept together, under the permission, for years, without objection, and it would now be most unjust and oppressive to make the administrator accountable for what can at most be merely a clerical omission.

II. The second point presented by the second bill of exceptions is, was the allowance to the administrator excessive ?

The allowance was for overseer's wages, as well as his compensation as administrator, and expenses, and the bill of exceptions shows, that the judge adopted the very lowest estimate, and might, without error, have allowed much more, and he should in fact have allowed annual interest on his services, which would have made it much more favorable to the administrator. 9 Ala. 734, 895 ; Philips v. Thompson, 9 Por. 664.

CHILTON, J.—But two points are presented for consideration by the record. The first is, did the judge of the orphans' court properly allow the amendment of the record to be made *nunc pro tunc,* so as to show the administration was under the law authorizing the estate to be kept together for ten years—the second, whether the compensation allowed the administrator was greater than the law authorizes.

To one or the other of these propositions, the various assignments of error may be reduced.

By the act of 1815, (Dig. 198, § 30, *et seq.*) the judges of the several county courts are authorized, on application made, and good cause shown, the by administrator of an estate, to keep the personal estate of the decedent together, and exempt from sale for any length of time, that they may deem advisable, not exceeding ten years. In such event, the administrator is required by law to make annual returns of the manner in which such estate has been managed, the crops made, the expenses incurred, and the disposition of all monies received from the estate, and if he fail to do this, the court is required to issue an attachment against him to compel its performance. In addition to the foregoing duties, he is required to keep a regular account of all monies appropriated, or expended, for each and every person entitled to distribution of the estate, and to make annual returns of the same to the judge. To secure the performance of these duties, the judge is required to take a bond with sufficient security, conditioned for their performance by the administrator. In this case, letters of administration were granted to the defendant in error, on the 4th Nov'r, 1840, and at the same time the court granted an order of appraisement, and for the sale of the personal property. A portion of the personal property was sold, as appears from the inventory of sales, and orders were made from time to time by the court, authorizing the sale of the cotton crops, the proceeds of which crops are accounted for by the administrator, but no annual return or settlement, as required by the statute above referred to, was made by the administrator. It further appears, that on the 7th December, 1842, the administrator made application to the court for final settlement upon the estate, and a day was appointed by the court for that purpose, and publication ordered, but nothing in furtherance of said order appears to have taken place. In April, 1846, another application was made by the administrator for final settlement, which was ordered, and which, after several continuances, was made in April, 1847. There is nothing appearing on the record of the proceedings had in the orphans' court, to show that the estate was administered upon under the act of 1835. We should

rather draw a different conclusion from the orders above referred to. The letters of administration are general—a general order was made at the time, for the sale of the personal estate, without exemption as to the slaves. The failure of the administrator to make, and of the court to require annual returns of the monies received, and the expenses incurred, and the disposition of all monies received from the estate, and accounts of funds paid or expended for the distributees, —all these are persuasive to show, that the estate was in process of settlement under the general law. There was then, nothing of record which would authorize the court, some six years after the order was passed granting administration to make the amendment in the order, changing the character of the administration. The argument of the defendant's counsel, that the leave granted annually to the administrator to sell the crops, and the receipt of his accounts of sales, establish that the orphans' court had granted the order to keep the estate together under the ten years' statute, is untenable, inasmuch as none of these orders were made at the term when it is insisted the authority sought to be supplied by the amendment, was conferred; and it cannot be that the court, where there is no record evidence to amend by, can make the evidence which is to be the predicate of its subsequent action in making the amendment. If such were permissible, the statute, (Dig. 322, § 55,) would be entirely evaded. This only authorizes amendments when the record furnishes sufficient matter to amend by. In Thompson v. Miller, 2 Stew. 470, it was shown by parol evidence, that at a previous term of the court, an order had been made requiring the plaintiff, who was a non-resident, to give security for cost, and the order not appearing on the minutes, it was entered *nunc pro tunc*, but this court say, "we have no hesitation in saying, the order of the court below, entered *nunc pro tunc*, on oral testimony, was erroneous—such orders or judgments are only authorized where predicated on matter of record, or some entry or memorandum made by, or under the authority of the court." This case is referred to without disapproval in the case of Brown v. Bartlett, 2 Ala. Rep. 29, and the same principle is reaffirmed in Armstrong v. Robertson and Barnwell, 2 Ala. Rep. 164, in which the name of

Franklin Robertson, instead of Franklin Armstrong, was inserted in the judgment entry by mistake. See also, Andrews, adm'r, v. The Branch Bank of Mobile, 10 Ala. Rep. 375. These authorities, sustained as they are, by numerous decisions of other states having similar statutes, (see McKey v. Moore, 4 Bibb, 321; Varnon v. Moore, 1 Monr. Rep. 214; Waldo v. Spence, 4 Conn. Rep. 71; People v. McDonald, 1 Cow. Rep. 189; Atkins v. Sawyer, 1 Pick. Rep. 351,) are quite sufficient to show there was no warrant for the entry made *nunc pro tunc* in the case at bar. The effect of the entry was to give the court a jurisdiction which it did not possess before the act of 1835, and to change materially the administration of the estate, and we feel satisfied the court erred in receiving and acting upon the parol evidence, in making the amendment, as shown by the bill of exceptions.

2. The law, as applicable to this administration, required the administrator to receive the assets of the estate, to pay the debts which were a charge upon the estate, and to pay the residue to the persons entitled to receive it. Willis's adm'rs v. The Heirs of Willis, 9 Ala. Rep. 330. If under a misapprehension as to the fact that the record showed he had authority to keep the estate together, he has gone on to incur expenses in keeping up the farm and supporting the hands, and rearing the infant children, and has expended his own labor in the management of the business, we will not say he is without remedy; all we now decide is, he cannot be relieved in the orphans' court, to the extent that court has gone in its decision. As he had no authority for keeping the estate together, and working the slaves on the plantation, the distributees may elect whether they will take the profits of the business, or will go against the administrator for the reasonable rents of the land, and use of the personal property. See Steele v. Knox, 10 Ala. Rep. 608. If they elect to take the hire for the slaves, the administrator will be allowed for his services in taking care and providing for such of them as could render no service; so also, if they take the profits, the nett proceeds of the farm and hands should be charged against him, and it is competent for the orphans' court, if the administrator has in good fath personally super-

intended the hands as an overseer, (and we think the evidence very satisfactorily shows the fact,) to allow him whatever sum a prudent man would have been justified in paying an overseer, taking into consideration the situation of the estate. See Harris v. Martin, 9 Ala. Rep. 895; O'Neil v. Donnell, Ib. 734.

It is unnecessary for us to notice the many items objected to in the account furnished by the administrator on final settlement. The views above expressed, will furnish a sufficient guide as to them upon another settlement.

The decree of the orphans' court is reversed, and the cause remanded.