McCREELISS'S DISTRIBUTEES *vs.* HINKLE, Adm'r.

1.  The power to dismiss a writ of error, unless the plaintiff will refund the
money which he has collected on the judgment complained of, is discre-
tionary, and will not be exercised where the money has been paid with-
out compulsion, and the defendant in no aspect of the case can be in-
jured.
2.  A security on the administration bond is not a competent witness for
the administrator on the settlement of his accounts.
3.  Where the only question at issue is whether the administrator has paid
an account due by the intestate, a receipt signed by the duly authorised
agent of the creditor, accompanied with proof of his signature and of the
removal of both the principal and agent from the State, is *prima facie*
evidence of the payment.
4.  The record of an annual settlement by an administrator, which fails to
show notice to the distributees, and the appointment of a guardian *ad
litem* for the infants, is not *prima facie* evidence against them, and is
therefore inadmissible.
5.  If an administrator makes affidavit that he has not used the funds of the

estate for his own private purposes, and his statement is not contro-
verted, he is not chargeable with interest.

6. Where an administrator without authority continues to employ the
slaves of the estate in the business in which they were engaged at the
time of the intestate's death, the distributees may elect to take their hire
or the profits realised: If they elect the hire, it is an abandonment of
the profits; if the profits, they must take them *cum onere* the expenses.

Error to the Orphans' Court of Lowndes.

T. & J. Williams, for the plaintiffs in error:

1. The authority of an administrator *de bonis non* embraces
only such of the personalty of the first decedent as remains *in
specie* unaltered or unconverted by his predecessor.—Cham-
berlain, adm'r, v. Bates, 2 Porter, 550.

2. An administrator *de bonis non* cannot be allowed credits
for payment of debts contracted by the administrator in chief,
unless he shows that such debts were justly chargeable to the
estate.—Hearin, adm'r, v. Savage, adm'r, 16 Ala, 286.    Dis-
tributees are allowed to elect whether they will take the proceeds
or hire of slaves where they are worked, without instructions in
will or by order of County Court.—Steel v. Knox, 10 Ala. 608.

3. Settlements before the Orphans' Court by administrator,
in order to make them *prima facie* correct, should show that
parties had notice; and in a case where infants are concerned
guardians *ad litem* should be appointed and there should be ac-
tion by Orphans' Court.—Willis v. Willis et al. 16 Ala. 652.

4. Interest should be charged where administrator keeps the
estate in money for ten years, notwithstanding the administrator
may state on oath he did not use the funds.

5. Security to administrator is incompetent to testify for ad-
ministrator on settlement of administrator's accounts, as execu-
tion may issue against him for the amount decreed on return of
*nulla bona* against administrator.

Stone & Judge, for the defendant:

1. The plaintiff in error has received full payment of the
sum decreed below, and cannot now prosecute a writ of error
without paying back all of the money received.   The rule and
the reason of it apply in this case with all their force, notwith-
standing what is said in the receipt.   The clear sense of the

rule is, that a party who has collected the money shall not prosecute a writ of error and reverse a case, when upon another trial he may recover nothing.—Hall v. Hrabrouski, 9 Ala. 278; Bradford v. Bush, 10 ib. 274.

2. To allow the party to prosecute a writ of error in this case is to permit him to claim all the advantages of the decree, while he submits to none of its disabilities.

3. The estate was very properly chargeable with the expenses incurred in keeping up the brick-yard; and if they were legitimate charges against the estate, and had not been paid by Porter, then administrator *de bonis non* was right in paying them and properly credited for the amounts thereof.

4. As to the competency of Rice as a witness, it is contended that his interest was remote and entirely contingent. It would have to be presumed in advance that the administrator would commit a *devastavit* to render his security incompetent on the ground of interest.

5. The receipt of Porter & Ryon by Pennington, or the account to which said receipt is appended, was properly allowed administrator as a credit. Its *justness* was admitted—the fact of *payment* alone was controverted. The testimony as to payment was legal, but if it was not, no injury has resulted. The justness of the account being admitted, the law presumes the administrator paid it; he having it in possession receipted.

6. Partial settlements of an executor or administrator, if made conformably to law, are to be considered as *prima facie* correct. If those in question were *exparte*, or not made conformably to law, the record does not show it. Error must be affirmatively shown or this court will not reverse.

7. The administrator was properly exempted from the payment of interest, he having made the statutory affidavit, which was not controverted. The administrator did not keep the funds on hand. Large payments were made to distributees, and disbursements made, as the record shows.

DARGAN, C. J.—Morgan B. Hinckle, the administrator *de bonis non* of John R. McCreeliss, filed his accounts and vouchers in the Orphans' Court of Lowndes for a final settlement. On the day appointed the parties appeared, a final settlement was made and a decree rendered, which shows that

the court ascertained to be in the hands of the administrator subject to distribution amongst the next of kin the sum of thirty-four hundred and eleven dollars. It further appears that the administrator then paid to the respective distributees their portions of this sum and no decree was rendered against him, but he was discharged and the estate declared to be fully settled. From this decree the distributees have taken a writ of error and brought the cause to this court. A motion is now submitted to dismiss the writ of error because the plaintiffs in error having received payment of the sum ascertained to be due to them, they cannot be permitted to prosecute a writ of error without refunding the money received by them to the administrator. In support of this motion the defendant in error relies on the authority of the cases of Hall v. Hrabrouski, 9 Ala. 278, and Bradford v. Bush, 10 Ala. 274. Both of those cases, however, were suits at law, and satisfaction of the judgments had been coerced by executions. In delivering the opinion the court said that it was obviously unjust to permit the plaintiff to collect the amount of the judgment of which he was complaining and at the same time to prosecute a writ of error, for if the judgment be reversed he might on another trial fail entirely to recover any thing. I fully agree in the propriety of these decisions, but do not think they are applicable to the case at bar. The very ground on which the court went in suspending all proceedings upon the writ of error unless the plaintiff would refund the money, was that on another trial the plaintiff might fail to recover altogether and thus be in possession of money to which he was not entitled. But I apprehend that these decisions would not apply to a case in the Orphans' or Chancery court, if it plainly appears from the showing or answer of the defendant, that the plaintiff could not recover less than the amount awarded to him by the decree. The power thus exercised by the appellate court, to compel the plaintiff to refund the money or dismiss his writ of error, seems to me to be a discretionary one and may be well exercised when the conduct of a party is vexatious or oppressive, and may ultimately result to the injury of the other, but when the defendant can, in no aspect of the case, be injured by the plaintiffs' receiving the money and this is paid without compulsion, I see no good reason why we should make an order on the plaintiff to refund the money or to sub-

mit to a dismissal of his writ. In this particular case, however, there is no decree in favor of the plaintiffs in error. The decree shows that on the day of the final settlement a sum of money was in the hands of the administrator which he paid over to the plaintiffs, and the decree was then rendered in his favor, by which he was entirely discharged. This is the same in effect as if this account had been paid to the distributees before the day of final settlement, and then on that day there had been nothing found in his hands due to the plaintiffs. We cannot doubt but that we should hear the errors assigned.

2. In the progress of the trial the administrator offered William Rice, who was his security on his administration bond, to give evidence in support of his accounts. The distributees objected to the competency of this witness on the ground of interest, but their objection was overruled. The court clearly erred in permitting the witness to testify. It is the well settled rule that bail to the action are incompetent to give evidence on the trial in favor of the defendant for whom they are bound as bail, and to render them competent they must first be discharged in some of the modes prescribed by law.—1 Greenl. Ev. § 392, and cases there cited. We cannot believe that the liability of the securities of an administrator on a final settlement of the estate is more remote or contingent than is the liability of bail. The bail is fixed by the recovery of judgment against his principal and the return of a *ca. sa. non est inventus.* So the liability of the security is fixed under our statutes by the return of an execution issued on the final decree, no property, and an execution may be forthwith issued against him. It would be inconsistent with all principle to hold that bail was incompetent to testify, but that the securities of an administrator or executor were competent to give evidence in favor of their principals upon the final settlements of the estates they represent.

3. The administrator insisted on a credit for the amount of an account due by the intestate to Porter & Ryan, and which he contended he had paid to Ryan, the surviving partner. The account was admitted by the distributees to be correct, but they contested the fact that the administrator had paid it. The account purported to be receipted by one Pennington, whose hand-writing was proven and who was shown to have been the duly authorised agent of Ryan, the surviving partner; and it was

also shown that both Pennington and Ryan had left the State and it was not known where they had gone. Under these circumstances the administrator offered the receipt as evidence to prove the payment of the account by him, to the sufficiency of which the distributees objected, but their objection was overruled. We think this evidence was properly received. The correctness of the account was not denied but admitted; it was therefore a just demand against the estate, and the evidence was certainly binding on Ryan, to whom the debt was due, to show that it had been paid; and being binding on him, we see no reason why the distributees can object to it. But it is urged that the administrator may have extinguished the debt for less than the amount, and if so, he could only charge the estate with the amount actually paid. The answer to this is, that the evidence shows *prima facie* that the entire amount was paid, and if the administrator extinguished it for a less sum, it was incumbent on the distributees to prove it.

4. The administrator also offered in evidence the records of two annual settlements made in the years 1838 and 1839, as *prima facie* evidence in support of his accounts and vouchers. The distributees objected to the introduction of these records, but their objection was overruled. In the case of Willis v. Willis, 9 Ala. 330, it was held that the annual settlements of an administrator made in conformity with law are *prima facie* to be considered as correct, but that they might be impeached by showing them to be incorrect. This case was again brought before this court and is reported in 16 Ala. 652, in which we held after a deliberate examination, that to make such settlements *prima facie* evidence of their correctness, it must be shown that the material requisites of the statute had been complied with; that it must appear that the distributees had notice of the time appointed for allowing the accounts, and if the distributees were minors, that a guardian *ad litem* had been appointed who might examine the accounts and object to them, if in his opinion they were incorrect; and that if it did not appear from the record that the distributees had an opportunity to object to the accounts before they were passed upon and allowed by the court, the settlement could not be received even as *prima facie* evidence of their justness. This decision shows that the records of the annual settlements of this adminis-

trator were inadmissible even as *prima facie* evidence. It does not appear that the distributees had notice of the time that the accounts and vouchers were passed and allowed, nor that a guardian *ad litem* was appointed for the minors. The court therefore erred in receiving these records even as *prima facie* evidence.

5. We think the court properly refused to charge the administrator with interest, he having made affidavit that he had not used the funds of the estate. By our statute, if an executor or administrator expressly deny under oath that he had used the funds of the estate for his own private purposes, he shall not be charged with interest unless that statement is controverted by introducing evidence that proves the contrary.—Clay's Digest, 198. It does not appear that any such evidence was introduced. The statement of the administrator was unimpeached and the court could not do otherwise than receive it as true, and hold that the administrator was not bound to pay interest.

6. In reference to the question growing out of the accounts paid by the administrator *de bonis non*, but which had been contracted by the administrator in chief, the bill of exceptions is so imperfect, that we think it better not to decide them, as the case must go back for another trial. But the cases of Benford v. Daniels, 13 Ala. 667—Steele v. Knox, 10 ib. 608—Hearrin v. Savage, 16 Ala. 286, will afford a sufficient guide to direct the court in its future action on this subject. It may, however, be observed that if an administrator without authority should continue to employ the slaves of the deceased in the business in which they were engaged at the time of the intestate's death and in so doing incurs expenses, the distributees may elect to take the use or hire of the slaves, or the profits realised by the administrator—they cannot claim both. If they elect to charge the administrator with hire, they abandon all claim to the profits; but if they claim the profits, they must take them *cum onere*, and must allow for all the reasonable expenses incurred in making such profits.

Let the decree be reversed and cause remanded.