[Hinson v. Williamson.]

# Hinson *v.* Williamson.

*Bill in Equity by Personal Representative of Deceased Administrator, for Settlement of Administration, and Account against Surviving Administrator.*

1. *Testamentary trusts; jurisdiction of Probate and Chancery Courts.* The Probate Court has no jurisdiction to enforce and settle a trust created by will; but, when such trust is conferred upon the executor, and distinct executorial duties are also devolved upon him by the will, that court, while declining to take cognizance of the trust, may settle all matters which pertain only to the executorial duties and office; unless the duties of the trust are attached to the executorial office or character, and are so inseparably blended and mingled with the executorial duties that they can not be distinguished from each other; in which case, if the trustee has accepted and undertaken the duties of the trust, the Probate Court has no jurisdiction to execute the will, and the parties will be remitted to the Chancery Court.

2. *Testamentary power; by whom executed.*—A power conferred by will, implying personal confidence in the donee, can only be exercised by the person named; and if he disclaims, or refuses to execute the trust, the power will be considered as revoked and absolutely annulled.

3. *Will authorizing executrix to keep estate together, and buy or sell property at discretion, construed as creating personal trust.*—Where the testator appointed his widow as executrix, and relieved her from giving bond; directed that his estate should be kept together "under her absolute power and control, she having full power to purchase or sell any property she may think proper, so long as she remains a widow;" that the annual profits of the estate should be invested by her in making purchases of property at her discretion, to be distributed among the children so as to equalize their distributive shares; and made provision for the immediate distribution of the estate, in the event of her death or marriage; *held*, that the will imposed upon the widow a personal trust in the matter of keeping the estate together, which was capable of execution by her alone; and she having refused to accept the trust, or qualify as executrix, the Probate Court could not confer on administrators *de bonis non* the power to execute it.

4. *Liability of trustees for acts and defaults of each other.*—The general rule is, that trustees are not ordinarily liable for the acts or defaults of each other, but each is liable only for such sums of money as he may receive in the due course of his fiduciary duties; yet, if one knowingly permits or acquiesces in a breach of trust or wrongful act of the other, or otherwise participates in a *devastavit* by him, he will be held liable as a co-principal; and also when, by his voluntary co-operation or connivance, he enables the other to accomplish some known object in violation of the trust.

5. *Liability of administrators for acts and defaults of each other.* When two administrators give a joint bond, and make a joint application to the court for an order to keep the estate together (one of them advancing moneys, from time to time, to carry on the business of the plantation, which was conducted under the immediate management of the other, and receiving a portion of the crops raised), and jointly account

[Hinson v. Williamson.]

on their partial settlements with the court; they are jointly liable, as co-principals, to account for the profits of the farming business so carried on, without regard to the particular part or sum received by each; and in such case, a final settlement in the Probate Court, made by the surviving administrator, while it might operate as a discharge of the liability of the deceased as surety on the joint administration bond, would not affect his liability as co-principal on account of his participation in any *devastavit* committed by the survivor during their joint administration.

6. *Keeping estate together under order of court.*—When an estate is kept together under an order of the Probate Court (Code, § 2602), the administrator has no authority to keep up the family establishment, and to support the family at the expense of the estate; but the reasonable expenses of the several members of the family, on a basis corresponding with their fortune and condition in life, should be charged against each separately as incurred by them, and not *in solido* against the estate.

7. *Same; authority of administrator, and compensation for extra services.*—Such authority to keep the estate together carries with it the incidental power to employ all ordinary means which are necessary and proper to effectuate the express power; hence, all expenditures reasonably necessary to cultivate the plantation, make, gather, and dispose of the crops, should be allowed, including, probably, a fair compensation to the administrator for his services in these matters.

8. *Keeping estate together without authority; election by distributees; interest on rents.*—When an administrator keeps an estate together without an order of court, and without authority under the will, the distributees may, at their election, either take the profits, or charge him with rent for the use of the property; if they elect to take the profits, an allowance must be made to the administrator for all reasonable expenses incurred in making them; and if they elect to charge him with the rents, interest thereon must be computed against him.

9. *Error without injury in statement of account.*—On statement of the accounts of a deceased administrator, under a bill filed by his personal representative, an overcharge against him, or the refusal of a proper credit, is error without injury, when the record shows that the distributees remitted a larger balance found against him; the *remittitur*, in such case, will be referred to, and will cure, the specific errors in the account.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JNO. A. FOSTER.

The original bill in this case was filed on the 17th November, 1877, by Joseph L. Hinson, as the administrator *de bonis non* of the estate of Joseph H. Hall, deceased, against James S. Williamson individually, and as surviving administrator of the estate of A. F. Williamson, deceased, against the widow and children of said A. F. Williamson, as legatees and devisees under his will, and as his heirs at law and distributees of his estate; and sought, 1st, a settlement of said Hall's administration on the estate of said A. F. Williamson; 2d, an account against said James S. Williamson, in the matter of his administration of said estate as co-administrator with said Hall; 3d, the appropriation and application, by order of the court, of the amount due on a decree which said James S. Williamson had obtained, after the death of said Hall, against the heirs and distributees of the estate of said A. F. Williamson, on final settlement of his own accounts as administrator of said estate, to the

[Hinson v. Williamson.]

payment of an alleged balance due to said Hall on joint administration account; and, 4th, the subjection of the lands belonging to the estate of said A. F. Williamson, in the possession of his widow and children, to the satisfaction of said decree, or of the amount which might be found due to complainant, as administrator, on settlement of said Hall's administration.

Said A. F. Williamson died in 1868, in Lowndes county, where he resided, leaving a widow and seven surviving children, some of whom were married, and others minors, and also several grandchildren; and being possessed of a residence in Lowndesboro, and a plantation in Autauga county, fifteen or twenty miles distant. His last will and testament, which was executed in 1863, and duly admitted to probate in said county after his death, contained the following provisions: "*Item* 1. It is my will and desire, that all my just debts shall be paid, as soon as possible after my death." 2. "It is my will and desire, that my entire estate shall be kept together, under the absolute management and control of my beloved wife, Martha Williamson; she, my beloved wife, having full power to purchase or sell any property she may think proper, so long as she, my wife, remains a widow." 3. "It is my will and desire, also, that as my children shall come of age, or marry, that my said wife shall, from the annual profits of my estate (if enough for said purpose), purchase and give to each, as nearly as possible, the same amount of property as I have already given to my son William F. and my daughter Susan E., wife of Joseph H. Hall, having reference more to the amount of the property than the value of the same in money, until all of my children shall have received a like portion; and if enough is not made from my estate to do this, then the deficiency to be made up from the property already in possession." 4. "In the event that my said wife should marry, it is my will and desire, that she shall receive a child's share of my entire estate, for her own use, benefit and behoof, and the remainder of my estate be equally divided between all of my children, each receiving share and share alike, as directed in item 3." 5. "In the event of my wife's death without marriage, it is then my will and desire, that my entire estate shall be equally divided between all of my children, share and share alike." 6. "To carry out this my last will and testament, I hereby constitute and appoint my beloved wife my sole executrix, relieving her of the necessity of giving bond, and making any return to the Probate Court. In testimony whereof," &c.

Mrs. Williamson, the widow, having renounced the right to letters testamentary, letters of administration with the will annexed were duly granted by the Probate Court of Lowndes, on April 3d, 1869, to said Joseph H. Hall and James S. William-

[Hinson v. Williamson.]

son, as co-administrators; and they thereupon executed a joint bond, and entered upon the discharge of the duties of the administration. On the 3d May, 1869, they returned a partial inventory of the property belonging to the estate, and on the 27th May a supplemental inventory; and on the 29th December, 1869, they obtained an order from the court in these words: "Came James S. Williamson and Joseph H. Hall, administrators of said estate, and made application for an order authorizing them to keep together the said estate for the next twelve months; and it being shown to the satisfaction of the court that it will be to the interest of said estate to keep it together for one year at least, it is therefore ordered, adjudged, and decreed, that said administrators be, and they are hereby, authorized to keep said estate together for the year 1870." On the 18th January, 1871, they obtained an order of the court authorizing them to "rent privately the lands belonging to said estate;" the order reciting that, from the evidence adduced, the court was satisfied "that it will be to the interest of said estate to rent the lands privately;" and they were required to report the renting to the court for approval. On the 10th April, 1873, an order was granted by the court, reciting that said administrators filed their petition, "in which it is alleged that the lands, and stock and supplies thereon, belonging to said estate, can not be rented out with advantage to the estate, and, having the plantation well stocked and supplied with labor, it would be to the best interest of the heirs and distributees of said estate that the same should be kept together and cultivated this year (1873), and asking that an order may be granted authorizing them to keep together and cultivate said plantation; and the court being satisfied as to the facts set forth in said petition, it is therefore ordered and decreed, that said petition be granted, and that said administrators be, and they are hereby, authorized to cultivate said plantation for the year 1873." While the estate was kept together under these orders, and during other years in which no orders of court were procured, the plantation was under the active superintendence and control of J. S. Williamson, one of the administrators; and money was advanced to him, from time to time, by Hall, his co-administrator, for the purchase of supplies and other necessary uses. During this time, and for several years afterwards, Mrs. Williamson and her family continued to occupy the family residence, and their expenses were paid by the administrators out of the assets of the estate.

In August, 1872, the administrators made an annual (or partial) settlement of their accounts, charging themselves with debits amounting to $12,916.38, and claiming credits to the amount of $12,989.78; and the account as stated was audited

and allowed, showing a balance of $73.40 in favor of the administrators. In August, 1873, they made another partial settlement, in which they charged themselves with debits amounting to $14,783.54, and claimed credits amounting to $17,838.45, showing a balance of $3.054.91 in their favor; and their account as stated was audited and allowed by the court. In April, 1875, they made a third annual (or partial) settlement of their accounts, charging themselves with debits to the amount of $2,391.20, and claiming credits to the amount of $3,991.54, showing a balance of $1,600.34 in their favor; and their account, as thus stated, was audited and allowed by the court.

Joseph H. Hall died, intestate, in November, 1876, never having made a final settlement of his accounts as administrator of the estate of said A. F. Williamson, and letters of administration on his estate were duly granted to his widow; and on her death in September, 1877, letters of administration *de bonis non* were granted on the 13th November, 1877, to the complainant in this cause. After the death of said Hall, James S. Williamson, as surviving administrator, continued in the administration of said A. F. Williamson's estate, until December, 1876, when he filed his accounts and vouchers for a final settlement; and on the final settlement thereupon had, in January, 1877, a balance of $4,803.61 was decreed in his favor. In this settlement, said administrator claimed, and was allowed, credit for the two items of $3,054.91 and $1,600.34, balances ascertained on the former partial settlements, as above stated. The bill alleged that the greater part of these balances, as ascertained and allowed on said settlements, was in fact due to complainant's intestate, said Joseph H. Hall, on account of his administration of said estate jointly with said James S. Williamson; that a large sum in addition thereto, to-wit, $7,000, was also due to said Hall from the estate of said A. F. Williamson, on account of said administration; and that certain lands, of which the surviving administrator had put the widow in possession, were the only remaining assets of the estate of said A. F. Williamson. On these facts and allegations, the bill prayed a final settlement of Hall's accounts as administrator of A. F. Williamson's estate; an account against James S. Williamson, the surviving administrator, of their joint administration; an injunction against the collection by said James S. Williamson of the decree in his favor, until the accounts between him and Hall were stated; that said decree might stand as a security, in favor of the complainant, for the balance ascertained to be due to his intestate on settlement of the joint administration account, and that the lands might be subjected, under the decree of the court, to the payment of the balance thus ascertained.

An answer to the bill was filed by James S. Williamson, alleging that, at the time letters of administration were granted to him and Hall, jointly, "it was understood and agreed between them that respondent should have and exercise the sole control of the administration of said estate, as between themselves, and that said Hall should be relieved from the care, trouble and responsibility of said administration ; and that respondent should collect and receive all moneys due the estate, pay all the debts and liabilities of the estate, and have and exercise all care, conduct and management of the plantation and other property belonging to the estate, and should [?] exclusively for himself all the compensation which might be allowed by law for his services and responsibility as such administrator ; and in pursuance of such understanding and agreement, respondent did have and exercise all the care, conduct and management of said estate, giving his personal and undivided attention to the same, particularly in cultivating and managing the said plantation, hiring laborers, superintending the gathering of crops, selling the same, renting out land, collecting rents, and paying all expenses and debts of the estate." He alleged that, while Hall did pay some of the debts of the estate, he was repaid by respondent out of the assets of the estate ; that said Hall, at the time of his death, was in fact largely indebted to the estate, on account of assets which he had received ; that no part of the balances ascertained to be due to the administrators on their partial settlements, or of the balance found due to respondent on his final settlement, was due or owing to Hall ; and he added, "Respondent is willing, and now proposes, to open said final settlement, for the purpose of auditing, examining and settling his administration in this court; and he charges that there were other items of payments made by him as such administrator, and sums assumed by him which were proper charges against said estate, but were not embraced in said settlement, and for which he is entitled to credit," specifying two items of $1,700 and $700 respectively.

Mrs. Williamson and the adult children adopted the answer of James S. Williamson, and a formal answer was filed by the guardian *ad litem* of the infant defendants. James S. Williamson afterwards died, and the cause was revived against his administrator. At the November term, 1879, the cause having been submitted on the pleadings for a decretal order of reference, Chancellor Austill rendered a decree, assuming jurisdiction of the administration of A. F. Williamson's estate by Hall and James S. Williamson, and ordering the register, as master, to state an acount of said Hall's administration ; and also to state an account between said Hall and James S. Williamson, in the matter of their administration, showing what

part of the balances ascertained to be due to the administrators, on their several partial settlements, was due to said Hall, and what part to said Williamson.

At the March term, 1881, an amended bill was allowed and filed, by which two paragraphs, numbered 9 and 10, were added to the original bill. This 9th paragraph alleged, that the estate of said A. F. Williamson "was kept together, and the said plantation cultivated for the benefit of the estate, by the said James S. Williamson, as one of the administrators thereof, during the whole time said Hall was administrator of said estate; that said James S. Williamson undertook and had sole control and management of the said plantation and the personal property thereon, during the time last aforesaid, and said Hall had no connection with, or part in said management and cultivation, except the payment of large sums of money for the expenses of such management and cultivation; that said Hall received, from the assets of said estate, a small part of the crop of cotton grown on said plantation during said time, which was turned over to him by said James S. Williamson, and which he sold, and charged in accounts kept by him, in his own handwriting, between him and said estate; that said Hall, besides paying the amounts of money for said expenses above referred to, paid large sums in extinguishment and payment of debts contracted by said testator in his life-time, and falling due after his death, and also large sums for the expenses and costs of said administration; and that said James S. Williamson received all the crops from said plantation, and was charged with the proceeds thereof in his said final settlement." The 10th paragraph alleged, that the widow occupied the family residence, with her minor children, and kept up the family establishment, from the time of the testator's death until the final settlement of said J. S. Williamson's administration; that the children were educated, and the expenses of the family were paid out of the assets of the estate, in a manner suitable to their condition in life, and large sums of money were also paid by said Hall, for these purposes, at the request of the widow and several distributees. The amended bill prayed, "that an account be taken of the amounts so paid out by said Hall for the joint use and benefit of said widow and children, and for the use and benefit of each of them severally; and that said amounts be decreed to be paid to complainant out of the proceeds of sale of said lands."

An answer to this amended bill was filed by the administrator *ad litem* of the estate of James S. Williamson, adopting his intestate's answer to the original bill, and demanding proof of the additional allegations of the amended bill; and a formal answer was filed by the guardian *ad litem* of the infant de-

[Hinson v. Williamson.]

fendants. Mrs. Williamson and the other adult heirs withdrew, by leave of the court, their answer adopting the answer of James S. Williamson to the original bill, and filed a full answer to the bills, original and amended. They alleged that said administrators not only gave a joint bond, but acted jointly in the management and conduct of the estate, jointly obtained orders of court, and were jointly liable for the acts of each other; that they kept up the plantation, hired laborers, and contracted debts, without any legal authority; that during the years 1870 and 1871, when they had procured orders from the court for the renting out of the lands, they rented the same to said James S. Williamson, for the nominal rent of $2,500, which was not one third of the amount realized by him from the cultivation of the plantation; and they claimed the right to elect, during each of the years while the estate was kept together, whether they would charge the administrators with reasonable rents, or take the profits realized by the cultivation of the plantation, They denied the finality and impeached the correctness of the partial settlements, and insisted that the final settlement was void for want of jurisdiction. They denied that, on a fair settlement, the estate of said A. F. Williamson would be found indebted to said administrators jointly, or to said Hall; and pleaded the statutes of limitations of three and six years, against the attempt to charge the lands with or on account of debts contracted by said administrators, or either of them.

In the statement of the accounts under the order of reference, the register reported a balance due to Hall's estate, from the estate of A. F. Williamson, of $7,359.50, but numerous exceptions were taken by the respondents to his rulings and conclusions; and the cause being submitted to the chancellor (Hon. Jno. A. Foster) on these exceptions, he set aside the report, and ordered a new statement of the matters of account. In an opinion accompanying his decree, and made a part of it, the chancellor held, 1st, that the provisions of the will as to keeping the estate together, buying and selling property, created a personal trust in the widow, which could not be devolved upon the administrators with the will annexed, nor be executed by them; 2d, that the administrators, having given a joint bond, and acted jointly in the matters of administration, were liable as joint principals for the acts and defaults of each other; 3d, that the orders of court for keeping the estate together, during the years 1870 and 1873, authorized the hiring of laborers and cultivation of the plantation during those years; 4th, that for the other years during which the estate was kept together without authority, the distributees had a right to elect whether they would ratify the acts of the administrators, and

take the profits realized, or repudiate their acts, and charge them with rents; 5th, that the administrators had no authority, at any time, to keep up the family establishment at the expense of the estate, but must charge the expenses of the several distributees against each as incurred, and must themselves lose all items which could not be thus distributed; 6th, that the partial settlements were to be regarded as *prima facie* correct, but might be impeached by either party on proof of errors or mistakes; and, 7th, that the final settlement of his accounts by James S. Williamson, though conclusive as between his personal representative and the distributees, and also conclusive as to Hall's liability as his surety on the administration bond, did not affect Hall's liability as a co-principal for all acts of administration in which he participated jointly with Williamson.

The accounts being again stated by the register, pursuant to the instructions given in this decree, he reported a balance of $2,847.59 as due from Hall's administrator to the estate of A. F. Williamson, and a balance of $2,201.40 in favor of Hall's administrator against the estate of James S. Williamson. The chancellor overruled the complainant's several exceptions to this report, and confirmed it; and thereupon decreed as follows: "It appearing to the court that, in the settlement between the estate of J. H. Hall and J. S. Williamson, said Hall's administrator was entitled to the full sum of the decree heretofore rendered by the Probate Court of Lowndes county, in favor of said J. S. Williamson, against the estate of said A. F. Williamson, and that said Hall's estate has received payment thereof in full, by credit in this settlement with the estate of A. F. Williamson; it is ordered, adjudged, and decreed, that said decree of said Probate Court be satisfied, cancelled, and of no force. And it further appearing that a large sum is shown by the register's report to be due from the administrator of J. H. Hall on this settlement with the estate of said A. F. Williamson, and that the defendants' now come into court, and waive all claim and demand against the estate of said J. H. Hall for and on account of such balance so ascertained; it is further ordered, adjudged, and decreed, that said complainant, as administrator of the estate of said J. H. Hall, and the estate of said Hall, be and are hereby released and discharged from all liability by reason of said Hall's having been administrator of the estate of said A. F. Williamson, whether under the will or by appointment of the Probate Court of Lowndes county; and that the estate of said A. F. Williamson, and the trustee under his will, be discharged from all liability to said Hall's estate by reason of the same."

The appeal is sued out by the complainant, and he here assigns as error the instructions to the register as to the state-

[Hinson v. Williamson.]

ment of the account, the overruling of his several exceptions to the register's reports, and each of the chancellor's decrees; the assignments of error being thirty in number, and embracing all the rulings of the chancellor adverse to the complainant.

WATTS & SONS, and E. J. FITZPATRICK, for appellant.—1. The general intent of the testator, as manifested by his entire will, must prevail over the particular; and that intent was the disposition of his property, in the manner, and upon the events specified in the 3d, 4th, and 5th items of the will. The shares were defined, and distribution directed to each child, on marrying or attaining majority, or to the widow and children on her marriage, or to all the children on the death of the widow; and distribution, on the happening of any of these events, was mandatory, positive, and without discretion. Each child had an undoubted right to enforce distribution of his share, on the occurrence of the event specified; and distribution to each, on marriage or majority, was necessarily to be made at different times. To give effect to this general intention, it was indispensable that the estate should be kept together; and the duty of doing this, in order that distribution might be made as provided, necessarily devolved upon the person by whom the will was executed—by the widow, if she qualified as executrix; otherwise, by the administrators with the will annexed. Keeping the estate together was an executorial duty, entirely distinct from the "absolute management and control," and the power to "purchase and sell" property, reposed as a personal trust in the widow. If the estate could only be kept together by the widow and executrix, her failure to qualify produced a case of intestacy, and the estate was liable to be distributed at the end of eighteen months from the grant of administration. In the following cases, similar provisions were held to create executorial duties, and not trusts: *Savage v. Benham*, 11 Ala. 49; *Smith v. King*, 22 Ala. 558; *Smith v. Kennard*, 38 Ala. 700; *Charles v. Stickney*, 50 Ala. 88; *Shipp v. Wheless*, 33 Miss. 646; *Lowe v. Barnett*, 38 Miss. 329; *Hancock v. Titus & Co.*, 39 Miss. 224; *Matthews v. Meek*, 23 Ohio St. 289; *Hinton v. Powell*, 1 Jones, N. C. 230.

2. If keeping the estate together was not an executorial duty, it was not a trust of personal confidence which died by the widow's failure to accept it. The limitations of the estate depended upon the exercise of that power; it was a power coupled with a trust, the execution of which a court of equity would have enforced for the benefit of the beneficiaries. Such a trust survives, and may be executed although the trustee declines to act.—1 Perry on Trusts, §§ 248–9; 2 Story's Equity, § 1062; 2 Washb. Real Prop. 325, mar.; *Peter v. Beverly*,

[Hinson v. Williamson.]

10 Peters, 563; *Osgood v. Franklin*, 2 John. Ch. 1–20; *Franklin v. Osgood*, 14 John. 529, 553. If the administrators had applied to the Chancery Court, that court would certainly have directed them to keep the estate together, because the provisions of the will required it; and having done so without its order, that court will ratify and approve their action.—2 Perry on Trusts, 5, 544–5; *Foscue v. Lyon*, 55 Ala. 455.

3. Whenever the will requires an estate to be kept together, the widow and children are to be supported out of it, though the will may contain no such express provision.— *Worley v. High*, 40 Ala. 171; *Clopton v. Jones*, 38 Ala. 121; *Wynne v. Walthall*, 37 Ala. 37; *Coleman v. Camp*, 36 Ala. 159; *Moore v. Moore*, 18 Ala. 242; *McLeod v. McDonnell*, 6 Ala. 236. Therefore, the administrators were entitled to credit for expenditures made in supporting the widow and children, in their accounts with the estate; and the court below erred in overruling their exceptions to the register's report as to these matters. Separate accounts against the several distributees, for their separate expenditures, are only necessary when the estate is kept together under the statute.—Code, §§ 2602 *et seq.*

4. The account of Hall's administration should have been stated separately from that of Jas. S. Williamson.—*Davis' appeal*, 23 Penn. St. 206; *Patterson's estate*, 1 Watts & Serg. 391. The original bill prayed this, and the evidence was clear as to what Hall had received, and what he had paid out; that he had paid out $2,678.25, and had only received $476.85.

5. Hall was liable as surety for Williamson's acts, by reason of their joint bond; but this liability was discharged by Williamson's final settlement and discharge as principal.—*Jones v. Jones*, 42 Ala. 218; *Turner v. Wilkins*, 56 Ala. 173; *Williams v. Harrison*, 19 Ala. 277. That the Probate Court had jurisdiction to make that settlement, see *Ex parte Dickson*, 64 Ala. 188. That settlement is conclusive, until opened and set aside in equity (on bill filed for the purpose), or reversed on appeal.—*Hutton v. Williams*, 60 Ala. 107; *Stabler v. Cook*, 57 Ala. 22; *Otis v. Dargan*, 53 Ala. 187; *Waring v. Lewis*, 53 Ala. 616; *Modawell v. Holmes*, 40 Ala. 391; *Duckworth v. Duckworth*, 35 Ala. 75; *Cowan v. Jones*, 27 Ala. 317; 15 Ala. 269.

6. Besides his liability as surety, Hall was only liable for those acts of Williamson in which he participated.—*Peter v. Beverly*, 10 Peters, 532; *Turner v. Wilkins*, 56 Ala. 173; *Conner v. Stewart*, 9 Ala. 803; *Taylor v. Roberts*, 3 Ala. 83; *Sutherland v. Brush*, 7 John. Ch. 22; *Knox v. Pickett*, 4 Dess. 92; *Lenoire v. Winn*, 4 Dess. 65; *Williams v. Maitland*, 1 Ired. Eq. 93; *Ochiltree v. Wright*, 1 Dev. & Bat. Eq. 337; *Williams v. Nixon*, 2 Beav. 472; *Roach v. Hubbard*, Litt. Sel.

[Hinson v. Williamson.]

Cas. 235; *Lawrence v. Lawrence, Ib.* 123; *Johnson v. Johnson*, 2 Hill's Ch. 293; 4 Vesey, 596, note *a;* 11 Vesey, 333; *Brazer v. Clark*, 5 Pick. 96; 2 Lomax Ex'rs, 298, mar.; 2 Wms. Ex'rs, 1119, 1584. The only evidence showing any participation by Hall in the acts of Williamson, was the testimony of J. M. Howard, which was incompetent, and was duly objected to.—*Stuckey v. Bellah*, 41 Ala. 700; *Waldman v. Crommelin*, 46 Ala. 580; *Key v. Jones*, 52 Ala. 238; *Strange v. Graham*, 56 Ala. 614; *Drew v. Simmons*, 58 Ala. 463; *Davis v. Tarver*, 65 Ala. 101. Even if this evidence be admitted, it shows no participation or acquiescence by Hall in any application by Williamson, either rightful or wrongful, of any assets of the estate. Williamson occupied the plantation, as he had the right to do.—*Edwards v. Crenshaw*, 14 Peters, 166. He took all the crops, sold them, and received the proceeds of sale; and for his application of them he has fully accounted. If Hall participated or concurred in any of these acts, so as to make them his own, his liability would only extend to those acts which Williamson had not paid for. As for all items embraced in the final settlement of Williamson, or in the partial settlements carried forward into it, Williamson has accounted; and the bill does not seek to set aside that settlement.

7. As to the alleged error of $4,812.35 in the partial settlement of 1873, now charged against Hall, the evidence was not sufficient to overturn the presumptive correctness of that settlement. At most, it only shows that a mistake may possibly have occurred; and this is not sufficient.—*Newberry v. Newberry*, 28 Ala. 691; *Brandon v. Cabaniss*, 10 Ala. 155; *Jarrell v. Lillie*, 40 Ala. 273; *May v. Williams*, 27 Ala. 272; *Lindsey v. Perry*, 1 Ala. 204; *Douglass v. Eason*, 36 Ala. 688.

GUNTER & BLAKEY, and R. M. WILLIAMSON, *contra.*—1. The will gives the widow a life estate in the property, charged with the support of the minor children, subject to be defeated on her marriage, and liable to be diminished by advancements made to the children as they arrived at age or married; and in giving her power to keep the estate together, under her absolute control and management, and to buy and sell property at discretion, it creates in her a personal trust, which did not devolve upon the administrators with the will annexed, and which could not be executed by a stranger under appointment from any court. *Tarver v. Haines*, 55 Ala. 506; *Ex parte Dickson*, 64 Ala. 188. An administrator is a mere ministerial officer, whose duty it is to collect the assets, pay debts, and surrender the property to those who may be entitled to it; and he does not succeed to the personal trusts created by the will.—*Camp v. Coleman*, 36 Ala. 163, 169; *Hitchcock v. U. S. Bank*, 7 Ala. 386; *Perkins*

[Hinson v. Williamson.]

*v. Lewis*, 41 Ala. 649; *Anderson v. McGowan*, 42 Ala. 280; *Ex parte Dickson*, 64 Ala. 188; *Tarver v. Haines*, 55 Ala. 506.

2. The administrators had no authority, under the orders of the court for keeping the estate together, to keep up the family establishment, and support the family at the expense of the estate; but should have charged the expenses of each distributee against him individually.— *Willis v. Willis*, 9 Ala. 335; *Jones v. Dawson*, 19 Ala. 572; *Coleman v. Camp*, 36 Ala. 159; *Pickens v. Pickens*, 35 Ala. 442. Nor did those orders confer on them any authority to hire laborers and cultivate the lands belonging to the estate. If the decedent had been engaged in merchandizing, manufacturing, or any other kind of business, an order for keeping the estate together would not have authorized the administrators to continue that business. Such an order simply means a postponement of the period for distribution, and has no reference to the employment or use of the property. These acts being done without authority, the distributees had a right of election, either to take the profits realized, or to charge the administrators reasonable rents.—*Steele v. Knox*, 10 Ala. 608; *Harrison v. Harrison*, 39 Ala. 489.

3. The administrators gave a joint bond, acted jointly in the management of the estate, and made partial settlements in their joint names. Under these circumstances, they are liable as co-principals for the acts of each other.—Perry on Trusts, § 426; *Stewart v. Conner*, 9 Ala. 803; *Scruggs v. Driver*, 31 Ala. 287. Their joint liability is clearly established, without the evidence of Howard, which was objected to; but that evidence was properly admitted, since Howard was only a nominal party, and did not testify as to any transactions with Hall.—*Ala. Gold Life Insurance Co. v. Sledge*, 62 Ala. 569; *Miller v. Clay*, 57 Ala. 162.

4. J. S. Williamson's final settlement of his accounts, however conclusive as between his estate and A. F. Williamson's distributees, is not conclusive on Hall's estate, he not being a party to that settlement; nor does it conclude said distributees in this cause, wherein Hall's administrator seeks a settlement of his administration. Estoppels are mutual; and when Hall's administrator seeks to go behind that settlement, Williamson's distributees must have equal right to impeach it. If an error of $4,800 occurred in the joint partial settlements, as is clearly shown, and Williamson did not account for it on his final settlement, as is apparent from that settlement, Hall may now be made to account for it. But that settlement does not conclude any one, being void for want of jurisdiction. As to all of their unauthorized acts, the administrators were trustees *in invitum*, and liable to account as ordinary trustees; and the Probate Court had no jurisdiction to settle their accounts.

*Bailey v. Munden*, 58 Ala. 104 ; *Harrison v. Harrison*, 39 Ala. 478 ; *Reaves v. Garrett*, 34 Ala. 558 ; *Wilson v. Moore*, 1 My. & K. 127 ; 1 Perry on Trusts, § 245.

SOMERVILLE, J.—The question of principal importance is the proper construction of the will of the testator, A. F. Williamson, bearing date November 28th, 1863. The *second item* of the will reads as follows :

" It is my will and desire, that my entire estate shall be *kept together*, under the *absolute management and control* of my beloved wife, Martha Williamson ; she, my beloved wife, having *full power to purchase or sell any property she may think proper*, as long as she, my wife, remains a widow."

The question is, does this clause of the will, aided in interpretation by other parts of the instrument to which we shall advert, impose upon the widow a *personal trust*, capable of execution alone by her, or a mere *executorial duty* which could be performed by the administrators *de bonis non* with the will annexed, Hall and Williamson, who seem to have attempted its execution. This inquiry determines the further and dependent one, involving the jurisdiction of the Probate Court of Lowndes county, authorizing these administrators to carry out this clause of the will.

There are certain well-settled principles of law, derived from the past decisions of this and other courts, which, in our view, present an easy solution of the inquiry.

It can not be doubted that, when *a trust* is created by will, the Probate Courts of this State have no jurisdiction to enforce or settle such trusts.—*Harrison v. Harrison*, 9 Ala. 470 ; *Johnson v. Longmire*, 39 Ala. 143.

This principle, however, very clearly does not oust the jurisdiction of the Probate Court in all cases where a testator by his will devolves testamentary trusts upon the person appointed executor. Such executor may be regarded as occupying a dual capacity in his relations to the will—that of *trustee*, as well as of an *executor* proper. These two offices are not to be considered as necessarily blended in their official functions.—*Perkins v. Lewis*, 41 Ala. 649 ; *Perkins v. Moore*, 16 Ala. 9 ; *Leavens v. Butler*, 8 Port. 380 ; 1 Perry on Trusts, § 281. The Probate Court, in cases of this nature, may properly undertake to settle up such matters as pertain to the executorial duties or office, and decline to take cognizance of the extraordinary trusts which fall outside of the scope or sphere of the ordinary duties of executors and administrators.—*Ex parte Dickson*, 64 Ala. 188; *Pinney v. Werborn*, 72 Ala. 58.

But, when it can be gathered, from a sound construction of the whole will, that the intention of the testator is to attach
13

the execution of *the trusts* to *the executorial office* or character, and not to *the person of the executor or trustee*, and the duties of the executor and of the trustee are so blended and mingled as that they can not be distinguished or separated the one from the other—the functions of the two offices being indissolubly linked together—then the Probate Court will decline any jurisdiction to execute the will, but will remit the parties concerned to a Court of Chancery, if the trustee has accepted and undertaken the duties of the trust.—*Ex parte Dickson, supra; Perkins v. Lewis,* 41 Ala. 649 ; *Anderson v. McGowan,* 42 Ala. 280 ; *Coleman v. Camp,* 36 Ala. 159 ; Perry on Trust, §§ 262, 263.

The rule, moreover, is unquestionable, that powers which imply personal confidence in the donee, when conferred by will, can be exercised alone by the person or persons in whom such confidence is reposed ; and if they disclaim, or refuse to exercise the trust, the power will be considered as revoked and absolutely annulled.—Perry on Trusts, § 273 ; *Cole v. Wade,* 16 Vesey, 44 ; *Wilson v. Pennock,* 27 Penn. St. 238.

The will of the testator in the present case, in our opinion, created such a personal trust in his widow, as authorized her alone to keep the estate together *under the provisions of that instrument,* and the Probate Court of Lowndes county had no jurisdiction to devolve such testamentary duties upon Hall and Williamson, the administrators *de bonis non.* If the will had simply authorized or directed her to keep the estate together, without more, this power would not, of itself, have constituted an extraordinary trust. In *Foxworth v. White,* decided at the last term (72 Ala. 224), we held that such such a power was an ordinary executorial duty, because it was one authorized to be conferred on personal representatives by the Probate Court, under the provisions of the statute.—Code, 1876, §§ 2602, 2607. Such is not, however, this case. The power is here conferred upon the inseparable condition, that it be exercised " under the *absolute management* and control" of the testator's widow, who was also invested with "full power to *purchase* and *sell any property* " she might think proper, so long as she remained a widow. She was relieved of all necessity of giving bond and security,—itself a circumstance implying confidence. The " annual profits " of the estate she was directed to invest by making purchases of property within her discretion, to be distributed to certain of the children for the purpose of equalizing their distributive shares. If the widow either *died* or *married,* items *four* and *five* make provision for the *immediate distribution of the estate.* It is manifest that extraordinary and unusual powers of management are here devolved by the testator, upon one in whom he had the most implicit confi-

dence. We can not say that the testator would have been willing for his estate to have been kept together, without the instrumentality of these supplementary powers, which closely approximate powers incident to ownership, and the absence of which would not only cripple the efficiency of the enterprise, but would seem to defeat the substance of his testamentary purpose. Nor are we permitted to say that he would have reposed this confidence or trust in any other person than the one whom he has selected. The power of keeping the estate together is so blended with the discretionary powers expressly conferred in order to carry it out, that we can not undertake to separate and distinguish them. It conferred a personal trust upon the widow, and, in view of her refusal to accept it, the Probate Court had no jurisdiction to execute the will. The settlements made, therefore, in this court, of the administrations of Hall and Williamson were incorrect, so far as they were conducted upon the theory of the existence of such jurisdiction. The views of the chancellor, as expressed in his opinion, fully accord with these principles.

The next inquiry of importance is, how far Hall was liable for the acts of his co-administrator, Williamson, in attempting to keep the estate together under the authority of the will.

The general rule is, that one trustee is not ordinarily held liable for the acts, defaults or *devastavits* of his co-trustee, each one being liable only for such sums of money as he may receive in the due course of his fiduciary duties.—2 Perry on Trusts, §§ 415, 421. But he will be adjudged liable as a co-principal, if he stands by, and knowingly permits, or acquiesces in a breach of trust or wrongful act of a co-trustee, or otherwise participates in a *devastavit* by him.—*Ib.* §§ 419, 454. So, if one trustee, by his voluntary co-operation, or connivance, has enabled one or more to accomplish some known object in violation of the trust.—2 Story's Eq. (12th Ed.) § 1280; *Taylor v. Roberts*, 3 Ala. 83. The giving of a joint bond is an agreement to be expressly liable each for the other.—*Pearson v. Darrington*, 32 Ala. 227. And the accounting together jointly to the court, or other like act of co-operation, is generally construed a holding themselves out as acting together, and assuming a joint liability:—*Scruggs v. Driver*, 31 Ala. 287; *Stewart v. Conner*, 9 Ala. 803; 2 Perry on Trusts, § 419. It is said by Mr. Story, that trustees are liable each for the other, "if it is *mutually agreed* between them that one shall have the *exclusive management of one part of the trust property*, and the other of the other part" (2 Story's Eq. § 1284),—a proposition which is amply sustained by authority, as well as supported by reason.—*Knight v. Haynie*, at present term; *Jones' Appeal*, 42 Amer. Dec. 291. It is upon this principle that it has

been held, where trustees appointed one of their number to be *factor* to their trust estate, that they would be liable for his defaults as agent, though not as trustee, in the same manner that they would be for the defaults of any third person whom they might appoint to the same agency.—*Howe v. Pringle*, 8 Cl. & Fin. 264; *Jones' Appeal, supra*, 42 Amer. Dec. 291.

The administrators, Hall and Williamson, are shown to have executed a joint bond. They applied jointly to the Probate Court for authority to keep the estate together under the statute. Hall advanced various sums of money, for the purpose of carrying on the farming business, and is shown to have received a portion of the crops raised on the plantation. So, it seems to have been mutually agreed, that Williamson should take charge of this part of the administration; and although Hall may have had nothing to do with the active superintendence and management of the farming transactions, he is sufficiently shown to have co-operated in and authorized them. The testimony shows, furthermore, that the two jointly united in accounting together to the Probate Court, until the death of Hall, which occurred in November, 1876.

In our judgment, there is sufficient testimony in the record, exclusive of that of Howard, to support the finding of the chancellor, that the act of keeping the estate together under the immediate management of Williamson, was the co-operate act of both administrators, and imposed a liability upon each of them, as joint principals, to account for the profits of the farming business, irrespective of the particular sum of the proceeds received by either. And, although the settlement made by Williamson in the Probate Court, be regarded as a discharge of Hall's liability, in his capacity as *surety* on the administration bond, yet this would not affect or discharge the superadded liability incurred as a co-principal, by reason of Hall's participation in any *devastavit* committed by Williamson. The chancellor places his liability upon the latter ground; and in this, we think, his decree is free from error.

The administrators, as we have seen, derived no power from the will to keep the estate together. Their only authority to carry on the farming operations must be derived from such occasional orders as were procured to this end from the Probate Court, under the provisions of the statute.—Code, 1852, § 1902; Code, 1876, § 2602. This statute clothed them with no authority to keep up the family establishment, or to support the decedent's family at the expense of the estate.—*Pickens v. Pickens*, 35 Ala. 442.

In such cases, the reasonable expenses of the family should be apportioned among the several distributees separately, so as to constitute a charge upon the share of each. They can not

[Hinson v. Williamson.]

be charged *in solido*, without reference to the particular member of the family on whose account such expenses were severally incurred. • The style of living is authorized to be maintained upon a basis corresponding with the fortune and social position or condition in life of the parties.—*Pinckard v. Pinckard*, 24 Ala. 250; *Pickens v. Pickens, supra.*

Where an administrator, or executor, is not authorized to keep an estate together, either by will or by authority of the Probate Court, he does so at his own hazard, and the distributees may elect to take the profits, or to charge him with rent for the use of the property.—*Steele v. Knox*, 10 Ala. 608.

If they elect to take the *profits*, an allowance must, of course, be made for all reasonable expenses incurred in making them. They will be entitled, in other words, only to *net*, and not to *gross* profits.—*McCreliss v. Hinkle*, 17 Ala. 459; *Harrison v. Harrison*, 39 Ala. 489; *Steele v. Knox, supra.*

Where rents are chargeable, interest will be allowed from maturity; the general rule being, that interest is always to be allowed, as the legitimate fruit of principal.—*Harrison v. Harrison*, 39 Ala. 489.

The power to keep the estate together carries with it the incidental authority of employing all ordinary means, which may be necessary and proper to carry out such express power. Hence, all expenditures are allowable which are reasonably necessary in order to cultivate the plantation, make, gather, and dispose of the crops.—*Pinckard v. Pinckard*, 24 Ala. 250; *Gerald v. Bunkley*, 17 Ala. 170.

This would probably include a fair compensation for the services of the administrator, which may be considered as extraordinary in their character.—*Harris v. Martin*, 9 Ala. 900; *Craig v. McGehee*, 16 Ala. 41.

The foregoing principles are all applicable to the present case, in view of the fact that the administrators omitted to procure authority from the Probate Court to keep the estate together, during several years of their administration, while during other years they did procure such authority. The chancellor seems to have observed all of these rules, in passing upon the exceptions to the register's report, except the last, allowing compensation to the administrators for extraordinary services performed in carrying out the orders of the Probate Court empowering them to keep the estate together. This error, however, and such other minor ones as we have been able to discover in the account, are more than over-balanced by the large amount shown by the report of the register to be due from the estate of J. H. Hall, in the matter of this administration,—*a claim to which was waived* in open court by the defendants, who declined to take judgment for it. It is obvious

[Wilkinson v. Stuart.]

that any errors in the account, less in amount than the sum thus voluntarily remitted, would be errors without injury, as against the complainant. The *remittitur* will be construed, in other words, to embrace these identical errors.

We do not consider the assignments on the cross-appeal by the defendants, as they are agreed to be abandoned in the event of our refusal to reverse the decree on direct appeal. We are requested by counsel not to consider them, in case of an affirmance of the chancellor's decree as rendered.

We discover no error in the record, and the decree is affirmed.

